Julianna McKENNA and Alice Brown, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

PEEKSKILL HOUSING AUTHORITY, M. George Habeeb, Individually, and in his capacity as a consultant to the Peekskill Housing Authority, Cyrus A. Bleakley, Individually, and in his capacity as Chairman of the Members of the Authority, and Jed Daly, Individually, and in his capacity as Housing Manager of the Authority, Defendants.

No. 78 Civ. 4993 (CHT).

United States District Court,
S. D. New York.

Sept. 21, 1979.

Westchester Legal Services, Inc., White Plains, N. Y., for plaintiffs; Andrew L. Levy, John T. Hand, White Plains, N. Y., Judith A. Kaufman, Peekskill, N. Y., of counsel.

Peter B. Nickles, Peekskill, N. Y., for defendants.

## OPINION

TENNEY, District Judge.

Plaintiffs Julianna McKenna and Alice Brown are tenants in a state funded housing project. They commenced this action to challenge a visitors rule promulgated by the Peekskill Housing Authority (the "Authority") that requires tenants to obtain the management's permission before entertaining overnight guests and to register such guests with the manager's office. Plaintiffs contend that the visitors rule, referred to as Rule # 5, deprives all project residents of their constitutional rights of privacy and freedom of association. Plaintiffs also assert that as a result of the Authority's visitors rule, they have personally suffered from "anxiety, fear, embarrassment" and have experienced a "chilling effect" on their constitutional rights. The defendants in this suit are the Authority; M. George Habeeb, individually and in his capacity as a consultant to the Authority; Cyrus A. Bleakley, individually and in his capacity as Chairman of the Members of the Authority; and Jed Daly, individually and in his capacity as Housing Manager of the Authority. On behalf of the proposed class of project tenants, plaintiffs seek a declaratory judgment invalidating Rule # 5, a permanent injunction prohibiting its enforcement, and a mandatory injunction directing the Authority to notify each tenant that the rule has been nullified. In addition, plaintiffs individually seek money damages against the Authority and defendant Habeeb. In the motion currently before the Court, plaintiffs seek to certify this suit as a class action brought on behalf of "all tenants who reside and will reside in the New York State enabled public housing project in the City of Peekskill operated by the defendant Authority, who are subject to . . . Rule # 5 of the Authority's Rules and Regulations." For the reasons discussed below, this motion is denied.

### Background

The Authority is a public corporation chartered under the New York Public Housing Law for the purpose of providing low-cost housing in the city of Peekskill, New York. The Authority operates two state funded projects, Bohlmann Towers, which contains 133 dwelling units, and Dunbar Heights, which contains 96 units. All project residents must comply with the official "Rules and Regulations for Tenants." Rule # 5, the subject of this action, states:

> # 5. *Roomers, Boarders, Lodgers or Visitors.* At times you may desire overnight or weekend visits of friends or relatives. This matter should be discussed with the Management. No reasonable requests will be refused; however, you must register your visitor in the Management Office Register and show therein time of his or her arrival and departure. Overnight guests who cannot be reported to the office because of emergency or late arrival must be reported the next business day. Failure to comply with the above may subject the tenant to eviction proceedings.

Every project resident receives a booklet containing the Rules and Regulations. Rule # 5 has existed since Bohlmann Towers opened in 1961. According to the Authority, no tenant has ever been evicted for noncompliance.

Plaintiff Julianna McKenna moved into Bohlmann Towers in 1965 and has been aware of the Authority's visitors rule since that time. In April 1976, McKenna was hospitalized for about three weeks for an operation. Before entering the hospital,

McKenna arranged to have her adult daughter, Regina, stay at her apartment to take care of McKenna's two younger children. When McKenna returned from the hospital, Regina agreed to stay at the apartment until her mother had recuperated. Defendant Habeeb, who was then Housing Manager for the project, learned that Regina was staying at McKenna's apartment while McKenna was hospitalized. Plaintiff alleges, and defendant denies, that after she returned from the hospital she received a telephone call from Habeeb who told her that she was not supposed to have overnight guests and that Regina would have to leave. According to McKenna, Regina left as a result of this phone call, and McKenna had to care for her other two children by herself while she recovered from her operation.

On another occasion in 1976, McKenna received a letter from Habeeb stating that she was violating the Authority's visitors rule by allowing a young man to stay in her apartment. Habeeb's letter advised McKenna that she could be evicted if this person did not leave. McKenna alleges, and defendants deny, that in response to this letter she informed Habeeb that the young man was a neighbor's son who occasionally visited the project.

Plaintiff asserts that as a result of Habeeb's actions, she has not had any overnight visitors since April 1976. She alleges that the Authority's visitors rule and Habeeb's conduct have caused her emotional suffering, invaded her privacy, and have had a chilling effect on her right to associate freely with friends and relatives.

Plaintiff Alice Brown and her six children have lived in Bohlmann Towers since 1973. Brown claims that her knowledge of Rule #5 and her fear of jeopardizing her public housing tenancy have compelled her to refuse requests from out-of-town friends and relatives to stay at her apartment overnight when they come to visit.[1] In February 1978, Brown received a letter from defendant Habeeb stating that two named individuals who had been observed entering and leaving Brown's apartment at various times had created a disturbance. Habeeb stated that Brown could not have overnight visitors "without the express written approval of the Housing Authority" and suggested that she make an appointment to discuss the matter further because "I do not think you want to lose your housing because of your visitors." Brown alleges that after receiving Habeeb's letter she became even more afraid of being evicted and has continued to refuse to let visitors stay overnight. She claims that Rule #5 and Habeeb's conduct have made her fearful and embarrassed and have had a chilling effect on her right to freedom of association.

### Arguments

Rule 23(a) of the Federal Rules of Civil Procedure ("Rules") delineates four prerequisites to a class action:

1. The class must be so numerous that joinder of all members is impracticable.

2. There are questions of fact or law common to the class.

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

4. The representative parties will fairly and adequately protect the interests of the class.

In addition to meeting these four requirements, the action must fall within one of the categories of cases described in Rule 23(b) in order to be certified under the Rule. Plaintiffs contend that this action satisfies the Rule 23(a) requirements and is within subsection (b)(2), which authorizes

---

1. Brown's complaint describes three incidents in which she refused to allow her guests to stay overnight because of the visitors rule. Twice she asked visitors to leave late at night after spending the evening at her apartment, and she would not permit an out-of-town relative to spend a month at her apartment while visiting in New York. The Authority alleges that Brown's evening guests could have spent the night at her apartment without violating the visitors rule because the Housing Manager's office was already closed. The Authority also points out that other tenants have been granted requests to have visitors stay for as long as two months.

class certification for actions in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class · as a whole." Defendants contend that the Rule 23 prerequisites to a class action have not been met and that class certification is not necessary to effectuate any relief that may be ordered by this Court.

In support of their motion for class certification plaintiffs argue that the Rule 23 numerosity requirement is satisfied because the approximately 230 families who live in the Authority's housing project are subject to the visitors rule. Plaintiffs view the constitutional validity of the rule as a question of law common to all members of the class. They therefore contend that the claims of the named plaintiffs are typical of the class, notwithstanding individual factual differences among specific cases. The concerns of the representative parties are claimed to be the same as those of other members of the class, and plaintiffs assert that their attorneys, Westchester Legal Services, Inc., will adequately protect class interests. Plaintiffs argue that considerations of judicial economy also favor class certification to avoid the possibility that the litigation will become moot prior to decision as a result of the proposed "federalization" of Bohlmann Towers.[2] Plaintiffs point out that a class action suit is particularly appropriate when the individual members of the proposed class are residents of a low-income housing project who probably could not afford to institute separate lawsuits. Finally, plaintiffs argue that this action should be distinguished from *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), discussed below, in which the Second Circuit denied class certification in a case in which the state government defendant expressly agreed that the Court's judgment would be binding with respect to all members of the proposed class and then withdrew the challenged policy before judgment.

The defendants, having provided plaintiffs with the names and addresses of all project residents, dispute plaintiffs' assertion that the class is so numerous that joinder is impracticable. Furthermore, defendants note that when the "federalization" of Bohlmann Towers is completed, all residents of that building, including the named plaintiffs, will be subject to federal housing regulations which differ from the Authority's rules. Defendants argue that in light of this future development, it is "academic and moot" for the court to rule upon the legality of the present visitors rule, particularly because no residents of Dunbar Heights, the other project building, are named plaintiffs in the suit.[3] According to the defendants, the plaintiffs' claims do not present questions of law or fact common to the class because neither McKenna or Brown ever submitted a visitor request to the Authority while requests made by other tenants have been freely granted and "no other . . . tenants have been denied visitation pursuant to Rule # 5." Defendants allege that plaintiffs' claims are actually personal grievances against defendant Habeeb, the former Housing Manager, and are thus not typical of the claims of the proposed class. Defendants also assert that not all project tenants are unable to afford legal counsel. Finally, relying on *Galvan, supra*, defendants argue that class certification is not necessary to effectuate any relief that may be ordered by this Court. The Authority has stated for the record that

---

2. Defendants have informed plaintiffs and the Court that the federal Department of Housing & Urban Development has approved a project that will provide funds to rehabilitate and remodel Bohlmann Towers. After the federalization process is complete, the dwelling units in this building will be part of a federal project, not state public housing. Bohlmann Towers residents will be federal tenants subject to federal regulations stating that all leases shall provide for the reasonable accommodation of the tenants' guests. Dunbar Heights will remain a state project, and its residents will continue to be state tenants subject to the Authority's rules.

3. Defendants point out that an action currently pending is challenging the visitors policy for federal tenants and the specific language contained in federal leases.

any relief or ruling granted by this Court would be deemed applicable to every tenant subject to the Authority's regulations and that the Authority would promulgate, print and distribute any modification or abrogation of the present visitors rule.

### Discussion

■■ Rule 23 is designed to protect the interests of a class of persons by permitting representative parties to litigate an action on behalf of all members of the class. For the reasons described below, the Court agrees with defendants' assertion that class certification pursuant to Rule 23 is not necessary to protect the members of the class that the plaintiffs seek to represent. The Court rejects, however, the defendants' curious contention that the future "federalization" of Bohlmann Towers makes the present controversy moot. The plaintiffs are currently subject to the Authority's visitors rule; their lawsuit should not be controlled by the federal government's proposed construction schedule. On the other hand, the Court cannot accept plaintiffs' argument that class certification is "essential" because the named plaintiffs may no longer be subject to Rule # 5 at some future date. To support this argument plaintiffs cite *Greklek v. Toia*, 565 F.2d 1259 (2d Cir. 1977) (per curiam), *cert. denied sub nom. Blum v. Toomey*, 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978), in which the Second Circuit, upholding certification of a class of "medically needy" persons challenging a New York State Department of Social Services deduction procedure, stated that "only class certification could avert the substantial possibility of the litigation becoming moot prior to decision." *Id.* at 1261. In contrast to the case at hand, the *Greklek* court noted that a prior action involving the same issue had already become moot and that the litigation, which was "urgent," had been expedited on appeal. *Id.* at 1260–61. As the plaintiffs themselves have pointed out, this Court has not been informed of even a projected date when Bohlmann Towers will become a federal project.

The Court concludes that class certification is not necessary in this case. In an apparent effort to fall within the Second Circuit's decision in *Galvan v. Levine, supra,* defendants have stated on the record that any 'relief or ruling issued by the Court would be applied to every state tenant. Furthermore, defendants have committed themselves to distributing copies of the Court's ruling and any modifications of Rule # 5 to all residents. Because it is ordinarily assumed that government officials will abide by a court's judgment, *Vulcan Society v. Civil Service Commission,* 490 F.2d 387, 399 (2d Cir. 1973); *Feld v. Berger,* 424 F.Supp. 1356, 1363 (S.D.N.Y.1976), the Court is satisfied that defendants' assurances guarantee that any judgment in plaintiffs' favor will be applied equally to all tenants. *Cf. Hurley v. Ward,* 584 F.2d 609 (2d Cir. 1978) (class certification held necessary where state did not concede that same legal question was posed by the application of the challenged practice to all those within the purported class).

The plaintiffs in *Galvan* challenged the constitutionality and application of New York Labor Law § 591(2) (McKinney 1977), which denied unemployment benefits to any person "not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience." In applying this law, the New York Industrial Commissioner had adopted a policy of denying benefits to a claimant who had left the labor market area in which he was last employed and moved to an area of "persistent high unemployment," which was defined as an unemployment ratio of 12% or more. The plaintiffs alleged that this policy was developed in order to deny benefits to Puerto Rican Americans who returned to Puerto Rico and that it had been applied exclusively to that group of claimants. They sought to challenge the New York law and the Commissioner's application of the 12% rule on behalf of all persons of Puerto Rican origin who had been denied unemployment benefits upon moving from New York to Puerto Rico on the basis of the Commissioner's policy. Upholding the district court's refus-

al to certify this proposed class of plaintiffs, the Second Circuit stated:

> But insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality .of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted in *Vulcan Society v. Civil Service Comm'n*, 490 F.2d 387, 399 (2 Cir. 1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated, . . . as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.

490 F.2d at 1261 (citations omitted, original emphasis).

According to Judge Friendly's opinion for the court, the practical significance of denying class action certification was therefore limited to the claim for a mandatory injunction ordering monetary restitution. He noted that the court's power to grant such relief was questionable, the practical difficulties were formidable, and he agreed that the state's policy arguments against affording restitution were impressive. "Since monetary relief thus was properly declined and class action designation was unnecessary for anything else, refusal of this was permissible." *Id.* at 1262.

Plaintiffs in the case at hand attempt to distinguish *Galvan* on several grounds. The Authority has not withdrawn the challenged rule or asserted that it will not be enforced in the future. Plaintiffs argue that, unlike the New York Unemployment Insurance Department, the Authority is a local board without the administrative resources required to see that court injunctions are enforced as to each individual affected. According to the plaintiffs, the Housing Manager, not the board, is responsible for the Authority's daily operations and would be responsible for effectuating any court order issued in this case. Plaintiffs argue against leaving the enforcement of a court order to the discretion of a Housing Manager who could be influenced by extrinsic factors such as a personal conflict with a particular tenant. Finally, stating that the Authority had not guaranteed that the court's final judgment would be binding as to all tenants, plaintiffs fear that other project residents will not even be aware of a judgment invalidating Rule # 5 if the Court rules in plaintiffs' favor.

As discussed above, this final objection has been answered in part by defendants' response to plaintiffs' motion for class certification. Defendants have assured the Court that any judgment will be applied equally to all tenants and that all tenants will receive copies of the Court's order. Furthermore, the judgment may be framed to insure this result and thus accomplish the same result as class certification. *See Marquez v. Kiley*, 436 F.Supp. 100, 110 (S.D.N.Y.1977). Under these circumstances, the Court does not find it necessary for the defendants to withdraw the challenged rule. Nor does the Court agree with plaintiffs' contention that the Authority and the Housing Manager cannot be relied upon to follow and enforce any order issued in this case. The presumption that government officers will abide by a court's judgment, *Hurley, supra; Vulcan Society, supra; Feld, supra,* is applicable to local officials and has previously been applied in cases involving city-wide housing authorities. *See, e. g., Braxton v. Poughkeepsie Housing Authority,* 382 F.Supp. 992, 995 (S.D.N.Y. 1974); *Tyson v. New York City Housing Authority,* 369 F.Supp. 513, 516 (S.D.N.Y. 1974).

Following the *Galvan* decision, courts in this circuit have denied certification in a host of cases in which plaintiffs have sought declaratory and injunctive relief on behalf of a class subject to a government rule or procedure when the courts

were confident that its judgment will be applied equally to every member of the proposed class without the "formality" of certification. *See, e. g., Finnerty v. Cowen,* 508 F.2d 979, 986 n. 20 (2d Cir. 1974); *Marquez v. Kiley, supra,* 436 F.Supp. at 110; *Feld v. Berger, supra,* 424 F.Supp. at 1363; *Spirt v. Teachers Ins. and Annuity Ass'n,* 416 F.Supp. 1019, 1023–24 (S.D.N.Y.1976); *Tyson v. New York City Housing Authority, supra,* 369 F.Supp. at 516; *Rappaport v. Katz,* 62 F.R.D. 512, 515 (S.D.N.Y.1974). While the *Galvan* court noted that the legal, practical, and policy objections to granting the class-wide monetary relief request in that case militated against certification, these subsequent cases have usually not involved claims for money damages on behalf of the class. In the case before the Court, the two named plaintiffs seek damages for themselves and injunctive and declaratory relief for the class of which they are members. Class-wide relief will in effect be provided if an injunction or declaratory judgment is granted in plaintiffs' favor.[4]

*Conclusion*

Accordingly, plaintiffs' motion for an order certifying this action as a class action pursuant to Rule 23 is denied. The Court views the defendants' statements for the record as a firm commitment to apply any order issued by this Court equally to all tenants and to distribute copies of any judgment modifying or nullifying Rule # 5 to all project residents. If a judgment is eventually issued in plaintiffs' favor, it will incorporate this guarantee.

So ordered.

---

**4.** A class action seeking an injunction or declaratory judgment may include a claim for monetary damages for the named plaintiffs, *Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905, 906 (9th Cir. 1975), and factual differences among class members do not preclude certification, *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). In this case, however, the nature of the individual relief requested, the disputed questions of fact, and the particular circumstances surrounding McKenna's and Brown's claims are additional factors suggesting that certification may be nei-

ther appropriate nor beneficial to the class or to the named plaintiffs. For example, McKenna claims damages for the chilling of her constitutional rights and the infliction of emotional stress resulting from statements allegedly made by defendant Habeeb—statements he denies having made. Brown alleges that she refused to entertain guests overnight because she feared eviction, but the Authority asserts that guests arriving late do not have to register and that no request for visitors has ever been denied by the board.