## TAYLOR et al. v. SCARBOROUGH.
### No. 378.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1933.

See, also, 56 F.(2d) 281.

Charles Halla, of New York City (Isaac R. Oeland, of New York City, of counsel), for appellants.

Cady, Schapiro & Schapiro, of New York City (Harold Wisan, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This suit was begun in the Supreme Court of the state of New York, county of Suffolk, and was removed into the District Court for the Eastern District of New York. It seeks to establish a lien in the amount of $20,000 for attorney's fees and $254.55 for disbursements, upon 1,000 shares of stock received in settlement of litigation and held in the custody of a depositary. The item for disbursements was not disputed. The fee claimed by the plaintiffs was based on a written agreement of the defendant, Scarborough, but the District Court set aside this agreement, determined that the fair and reasonable value of the plaintiffs' services was $18,500, of which $5,500 had previously been paid on account, and entered a decree in favor of the plaintiffs for only $13,254.55. They have appealed, contending (a) that the appellee's agreement should have been enforced; (b) that the agreed sum of $20,000, is the fair and reasonable value of the balance due them for services; (c) that an account was stated between the parties in this amount; and (d) that they are entitled to interest from July 10, 1931, on whatever balance is due them.

In January, 1927, Scarborough retained the plaintiffs, without discussion of fees, to represent him in contemplated litigation against the Aluminum Company of America. His claim was based upon his rights as a minority stockholder in Aluminum Die-Casting Corporation, the majority of whose stock was owned by said Aluminum Company of America. After the dissolution of Aluminum Die-Casting Corporation over Scarborough's protest, he instituted suit through the plaintiffs as his attorneys to compel the Aluminum Company of America and its subsidiary, the United States Aluminum Company, which became the purchaser at the dissolution sale, to account as trustees and to issue to him shares of their stock to represent the minority interest he had formerly held in the dissolved Aluminum Die-Casting Corporation. Although that suit had not been reached for trial, certain officers of the defendants had been examined and proceedings were pending for further examinations to be had in Pitts-

590

burg, Pa., on June 24, 1931. An offer of settlement had been made which Scarborough had rejected on June 3, 1931. That offer was to transfer to him 1,000 shares of stock of Aluminum Company of America, which at that time was quoted at $90 per share. The market price advanced, and on June 22, 1931, Scarborough consulted with his attorneys about reviving the offer of settlement. He asked what their fees would be, and was informed by Taylor that they would expect $25,000 in addition to the $5,500 they had already received. Scarborough protested that the fee was too high. Taylor then attempted to obtain from the attorneys for the defendants an increase in the number of shares they would offer, or a cash offer which would net Scarborough $100,000. The following morning Taylor informed Scarborough that this attempt had failed, but that the defendants' attorneys had suggested a settlement on the basis of 1,000 shares to be delivered at any time within a year. Scarborough was willing to accept a delivery within six months but again raised the question of fees, which Taylor finally reduced to $20,000 exclusive of what had been paid. After consulting his associates, Scarborough telephoned Taylor that they all thought the fee excessive, but Taylor refused to take less, or to allow the question of fees to remain open until after the settlement was closed, and Scarborough then agreed to make the settlement and to pay the $20,000 fee. Taylor requested that Scarborough confirm this by letter, and he did so on the afternoon of June 23rd, the letter reading as follows:

"My dear Win:

"At your request, I am confirming my statement made to you over the telephone today. If you can settle the Aluminum case for 1000 shares of Aluminum stock plus, I and my associate will give you $20,000.00 in cash, which is your requirement; this payment to be in full and final settlement without deduction for fees previously paid to you as our attorney.

"Very truly yours,
"W. B. Scarborough."

This is the letter relied upon as constituting Scarborough's agreement in writing to pay the fee sued for. Taylor replied by a letter of acknowledgment and confirmation on the same date.

The settlement was then closed with the attorneys for the defendants on the basis of 1,000 shares to be delivered on or before December 23, 1931, and Taylor so advised Scarborough by letter dated June 24th. Subse-

quently Scarborough consulted with Taylor in respect to signing various releases and at no time objected that he had been compelled to agree to the payment of excessive charges. On July 10, 1931, the plaintiffs sent him a copy of the settlement agreement and a bill for $20,254.55 for balance due for services and disbursements. Scarborough by telephone objected to paying the bill before the stock was received, but said nothing as to the amount of the fee. He requested delivery of the original of the settlement agreement, and on Taylor's refusal became angry. On July 17th the plaintiffs wrote requesting payment. To this letter Scarborough made no reply. After the telephone conversation of July 10th he did not communicate with the plaintiffs in any manner until November 17th. He then wrote them that "the manner in which you compelled me to accede to your charges in the Aluminum Die-Casting Corporation matter has been rankling with me ever since you insisted, only a day or two before the date set for trial in Pittsburg, on fixing your fee under threat that you would abandon the case if I did not comply with your demand." He asked that the fee be reconsidered. The plaintiffs replied, denying the charge, refusing reconsideration of the fee, and informing Scarborough that they were sending a notice of lien to the Aluminum Companies. The present suit was then commenced. On December 22, 1931, the stock was delivered to a depositary pursuant to stipulation. When the settlement was negotiated on June 23, 1931, the stock was quoted at about $130 per share. Thereafter it arose to $150, and then declined to about $70 in November when the defendant wrote the letter above mentioned. When delivered on December 22d, it was approximately $55 per share.

█ The District Court found that, although Taylor did not refuse to proceed with the case unless the fee was fixed at $20,000, he did refuse to proceed with the settlement unless such fee was agreed to. The appellants contend that we should reverse this finding of fact. The testimony on this point was in direct conflict. While it is true that on practically all other important points of contradiction the trial judge accepted the testimony of Taylor in preference to that of Scarborough, and while the latter's failure to complain that the agreement had been extracted from him by Taylor's threat until the serious decline in the market value of the stock rendered his settlement less attractive than at first, makes quite persuasive the argument that no such complaint would ever have been

591

heard of but for the falling market, nevertheless we do not feel at liberty to reverse a finding based on conflicting testimony concerning a conversation not inherently improbable. We accept, therefore, the District Court's premise as to the circumstances which induced Scarborough to agree to the fee.

Starting with that premise, the District Court proceeded to apply the New York law as stated in Rodkinson v. Haecker, 248 N. Y. 480, 162 N. E. 493, 496. It was there said that "contracts between attorney and client must be fair and reasonable, and fully known and understood by the client," and Judge Crane's opinion proceeded at page 489 of 248 N. Y., 162 N. E. 493, 496, as follows:

"As a general principle, a lawyer may make a contract with his client either for future or past services. Such a contract for compensation will be enforced, unless it appears to have been procured by fraud, deceit, overreaching, undue influence, or through any other means which would move a court of equity to modify or set it aside."

The District Court found that Scarborough's contract was not procured by fraud, deceit, overreaching, or undue influence, and that it was fully understood by Scarborough; but, since it was induced by Taylor's refusal to negotiate the settlement unless the fee was agreed to, the court decided that it must determine whether the contract was "fair and reasonable," and whether equity should enforce it. The conclusion was adverse to its enforcement because on the basis of a quantum meruit the fee was thought to be too high, although it was conceded that Taylor believed his services worth what he asked. The valuation fixed by the court was $18,500 for all the services. In arriving at this figure, the court determined that the value of the settlement on the date when it was made was not more than $75,000. This was found by taking the then market value of the stock as $130,000 and deducting therefrom the amount of a deposit made by the Aluminum Company and representing the sum, plus interest, which Scarborough could at any time have gotten without suit. Since the fee claimed by Taylor, $25,500 including prior payments, was one-third of the value of the benefit derivable from the settlement, the court thought it excessive, and reduced it to $18,500, or about one-quarter of the estimated benefit. In so doing he adopted neither the testimony of the defendant's experts nor that of the plaintiffs'. The former had based their estimate of a proper fee, their estimates ranging between $9,000 and $10,800, upon the result finally obtained as of the date of delivery of the stock; the latter had based their estimates of $26,000 and of $30,000 to $35,000, respectively, upon the value of the stock at the date of settlement without apparently taking into account the deposit which could have been recovered without litigation.

While the opinion, in respect to an attorney's compensation, of a judge possessed of long experience and such sound judgment as Judge Campbell is entitled to great respect and would ordinarily be undisturbed, the record discloses a fact, not alluded to in his opinion, which is persuasive to our minds that the plaintiffs have received too small an allowance. The Aluminum Companies were represented by the firm of Hughes, Schurman & Dwight, and for their services in defending the litigation and negotiating the settlement they received a fee of $22,500. Their services extended over a shorter period than did the plaintiffs', and necessarily the plaintiffs had the laboring oar and the more difficult task in working up the case and in extracting evidence from the defendants' officers. The controversy was of a character of admitted complexity and difficulty. While the fee paid counsel on the other side is by no means conclusive of what is a reasonable fee for the plaintiffs' services, we do think that it is quite persuasive in the circumstances here disclosed. Nor does the fact that a fee of $25,500 would be one-third of the estimated value of the recovery necessarily indicate that it would be unreasonable. The plaintiffs were not employed upon a contingent basis, but were to be paid reasonable compensation whatever the result. No doubt the value of the result attained is one of the elements to be considered. Other elements are the complexity of the problems and the amount of time devoted to them. Litigation on behalf of a minority stockholder against a financially powerful corporation is notoriously difficult to bring to a successful conclusion. The plaintiffs testified to spending some 1,600 hours of time. They succeeded in obtaining for their client 1,000 shares of the stock he sought, which at the time of settlement had a value of $75,000 more than the deposit which had been tendered him, and had a speculative possibility of being worth very much more or less at the time of delivery. That speculation the client understood and desired, for he had declined an offer of immediate delivery when the stock was at 90. On the entire record we think the District Court should have found that the fee agreed to was a reasonable compensation for the service rendered.

This renders it unnecessary to consider the other questions argued, except that relating to interest. Under the New York decisions, the decree should include interest from the date when payment was due, namely, July 10, 1931. Prager v. N. J. Fidelity, etc., Ins. Co., 245 N. Y. 1, 156 N. E. 76, 52 A. L. R. 193; Preston Co. v. Funkhouser, 261 N. Y. 140, 184 N. E. 737.

The decree appealed from is modified by allowing the appellants to recover the sum of $20,254.55 with interest thereon from July 10, 1931, and, as thus modified, is affirmed. The appellants are entitled to costs on appeal.