**John MIRABAL and Sharon Mirabal,
Plaintiffs-Appellants,**

**v.**

**GENERAL MOTORS ACCEPTANCE
CORPORATION, a corporation, and Ed
Murphy Buick-Opel, Inc., a corporation,
Defendants-Appellees.**

No. 77–1651.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1978.

Decided May 12, 1978.

Rehearing Denied July 14, 1978.

Rehearing and Rehearing In Banc
Denied July 14, 1978.

Albert Koretzky, Chicago, Ill., for plaintiffs-appellants.

Gary M. Elden, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.

Before SWYGERT, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

The issue presented in this appeal is whether the district court abused its discretion in determining that petitioner, attorney for plaintiffs, was entitled to $2,000 in attorney's fees and $690.10 in costs.

## I

Plaintiffs purchased a new car in 1971 from Ed Murphy Buick-Opel for which the cash price was $4,497.65. This purchase was financed in the amount of $2,460 through General Motors Acceptance Corporation (GMAC) on a 36-month installment contract. Defendants understated the annual percentage rate applicable to the transaction in the installment contract and GMAC sent a letter to plaintiffs informing them of this error, which letter plaintiffs denied receiving.

Plaintiffs filed an action charging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and two Illinois statutes. The district court found seven violations of the Truth in Lending Act and awarded $1,000 to plaintiffs for each violation. The district court also found violations of both Illinois statutes and awarded damages in excess of $1,000, bringing the total to over $8,000. On appeal, this court held that multiple recovery for multiple errors in a single disclosure statement was impermissible and that defendants had not violated the two Illinois statutes. Mirabal v. General Motors Corp., 537 F.2d 871 (7th Cir. 1976). The judgment was reduced to a total of $2,000 "plus costs and attorney's fees . . ." 537 F.2d at 885.

On remand petitioner alleged that he had expended 350 hours on the case, 120 at the trial level and 230 on the appeal. He also alleged that GMAC's attorneys were paid over $30,000 for handling the case. The district court awarded petitioner the total costs requested and attorney's fees in the amount of $2,000. Petitioner appeals from the attorney's fee award.

## II

The district court has broad discretion in making an award of attorney's fees because of the advantage of close observation of the work product of an attorney and an understanding of the skill and time required in the suit. Lea v. Cone Mills Corporation, 467 F.2d 277, 279 (4th Cir. 1972). Our review is limited to the determination of whether the district court abused this discretion. Waters v. Wisconsin Steel Works, 502 F.2d 1309, 1322 (7th Cir. 1974).

The instant case involves a car costing less than $5,000 and a loan of less than $2,500. Plaintiffs ultimately prevailed to the extent of $2,000 after getting somewhat over $8,000 at the original trial. Petitioner has thus received in attorney's fees an amount equal to that which his clients recovered in total.

■ Although the determination of hours necessary to effectively handle a case is not subject to exact determination, the amount which petitioner claims to have spent on the present case seems clearly out of proportion with the amount in controversy. Moreover, Congress has limited the liability of Truth in Lending Act violators to $1,000 per violation. 15 U.S.C. § 1640(a). To grant attorney's fees greatly in excess of a client's recovery requires strong support from the circumstances of the particular case. The instant case involved a one-time individual claim based mainly on a bona fide arithmetical error. As this court declared in Sprogis v. United Air Lines, Inc., 517 F.2d 387, 391 (7th Cir. 1975), when it balked at the fee request presented there:

First, this case does not represent the typical . . . claim envisioned by Congress and in the past sponsored by various public interest organizations. Second, the claim for attorneys' fees is not proportionate to the recovery of damages by plaintiff. Third, the precedential value of this decision is not controlling in light of [its reliance on an admitted arithmetical error].

Additionally, to grant large attorney's fee awards on the basis of relatively small injury would encourage suits which do not further the client's interest or the public's interest. The costs of these suits already forces many claims to settlement. *See* Landers, *Some Reflections on Truth in Lending*, 1977 Ill.L.F. 660, 680–81. Indeed, petitioner himself has inadvertently provided this court with an example of the questionable results in such suits. *See* Plaintiffs' Reply Memorandum (Document 16), page 4, and the letter attached to it. There petitioner made a settlement in a Truth in Lending case in which his client received $400 while petitioner was paid $12,000 as attorney's fees for the settlement. While such disproportionate sums may be exacted in settlement agreements, we should be loathe to automatically provide judicial approval for such results when these cases reach the courts.

■ Petitioner also claims that the attorneys for GMAC were paid over $30,000 and that this amount is indicative of what he should be paid (Petitioner's Brief, page 20). This contention was repeated at oral argument. This circuit has held that it is an abuse of discretion to determine attorney's fees solely on the basis of hours spent times billing rate. *Waters, supra*, at 1322. Petitioner wants us to go a step further and award him a fee based on what the *opposing side* spent in time and money. This ignores the fact that a given case may have greater precedential value for one side than the other. Also, a plaintiff's attorney, by pressing questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim. Moreover, the amount of fees which one side is paid by its client is a matter involving various motivations in an on-going attorney-client relationship and

may, therefore, have little relevance to the value which petitioner has provided to his clients in a given case.

■ Therefore, for the reasons discussed above, we conclude that the district court properly acted within its discretion in setting the award of attorney's fees at $2,000.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

Despite the thoughtful analysis of the majority's opinion, I am unable to agree with the conclusion it reaches. The enormous disparity between the amount of money received by defendants' attorneys and plaintiffs' attorney disturbs my sense of fairness. Plaintiffs won their lawsuit (though losing part of it on appeal), and yet their counsel received only one-fifteenth of what defendants' counsel was paid for defending the suit. This, together with the summary manner in which the fee proceeding was handled, compels me to dissent.

I

In 1971 plaintiffs purchased a new automobile from defendant Ed Murphy Buick-Opel, Inc. They financed part of this purchase through a retail installment contract with defendant General Motors Acceptance Corporation.[1] Later that year plaintiffs filed this action charging that defendants had committed numerous violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, and two Illinois statutes regulating consumer automobile financing.[2] Included in the allegations was a charge that defendants had understated the annual percentage rate by almost two percent. Defendants, while conceding that they had erroneously stated the annual percentage rate, asserted that the error resulted from a bona fide mistake and therefore they were statutorily

---

1. The cash price for the car including service, accessories, and taxes totalled $4,497.65. The total deferred payment price which plaintiffs financed through GMAC was $2,971.80. This sum included $2,201.00 for the principal, $257.00 for mandatory physical damage insurance, and $511.80 for the finance charge.

2. They were the Illinois Motor Vehicle Retail Installment Sales Act, Ill.Rev.Stat. ch. 121½, §§ 561 *et seq.*, and the Illinois Sales Finance Agency Act, Ill.Rev.Stat. ch. 121½, §§ 401 *et seq.*

exempt from liability.[3] The district court disagreed and entered judgment for plaintiffs, finding seven different Truth in Lending violations as well as violations of both Illinois acts. Damages were assessed in the sum of $8,126.80, $1,000 for each violation of the Truth in Lending Act and $1,126.80 for the two state law violations. The defendants appealed and the plaintiffs cross-appealed.[4]

After judgment had been entered but before the case was argued on appeal, Congress amended the Truth in Lending Act by barring multiple recovery for multiple errors committed in a single disclosure statement.[5] Under the amendment the most a debtor can recover in civil penalties is $1,000, regardless of the number of disclosure errors committed by a creditor in a single transaction.

On appeal we affirmed in part the judgment of the district court. *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976).[6] This court found that defendants had not met their burden of establishing that they were exempt from liability for misstating the annual percentage rate. Because the recently enacted amendment limiting recovery to $1,000 per transaction was held applicable to this pending cause, we did not consider the other six disclosure errors found by the trial court. Moreover, that part of the judgment finding liability under the two Illinois acts was reversed.

Plaintiffs also met with mixed success on their cross-appeal. While this court rejected the argument that defendants were severally liable under the Truth in Lending Act, it did agree with plaintiffs that each debtor was entitled to a separate recovery of $1,000. Because of the statutory change in the Truth in Lending Act, this court reduced the amount of judgment to $2,000 and remanded the cause for a determination of costs and attorney's fees.

On remand plaintiffs' attorney filed a verified petition for award of attorney's fees and costs. In it he stated that he spent 350 hours on this case, 120 hours for trial and 230 hours on the appeal. Defendants did not answer the petition;[7] they disputed neither the number of hours which counsel had expended nor that these hours were necessary to perform the legal services properly. It did become evident that defendants had paid their attorneys more than $30,000 in defending this suit.

A hearing was never held on the fee issue even though one had been requested by petitioner, plaintiffs' attorney. Instead the district court entered a minute order awarding $2,000 in attorney's fees and $690.10 in costs. Petitioner appeals the fee award.

## II

In awarding plaintiffs' attorney $2,000 for 350 hours of work,[8] the district court said that the expenditure of this many hours on this case was "utterly unnecessary." In the judge's view, most of these hours were spent in advancing "excessive legal theories." Which theories were excessive and what hours were unnecessary were not specified in the order.

3. 15 U.S.C. § 1640(c) provides in part:

A creditor may not be liable . . . if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

4. Plaintiffs cross-appealed on two issues: (1) whether the defendant-creditors were separately rather than jointly liable, and (2) whether separate recoveries were available for each plaintiff. Although plaintiffs lost the first issue on appeal, they did win the second. 537 F.2d at 880–83.

5. 15 U.S.C. § 1640(g), *as amended*, Pub.L. No. 93–495, § 408(e), 88 Stat. 1519. This amendment became effective October 28, 1974.

6. This case is discussed in Recent Developments, *Truth in Lending*, 11 Ind.L.Rev. 119 (1977).

7. Defendants did file a petition for offsetting attorney's fees, wherein they claimed they were entitled to $7,500 in fees for ultimately winning on the counts under the Illinois statutes.

8. Neither the defendants nor the district court ever claimed that plaintiffs' counsel did not expend 350 hours on this case.

I find it anomalous that the district court, after finding seven different Truth in Lending violations and two state disclosure violations and awarding plaintiffs over $8,000, is now able to say that plaintiffs' counsel advanced excessive legal theories. Moreover, was it "utterly unnecessary" for plaintiffs' counsel to defend the judgment once defendants chose to appeal? And, was it "utterly unnecessary" for plaintiffs to cross-appeal? I believe that plaintiffs not only had the right, but under Canon Seven of the Code of Professional Responsibility,[9] plaintiffs' attorney had the duty to protect the judgment he obtained for his clients.[10] Furthermore, had plaintiffs not cross-appealed, they would have recovered only $1,000 instead of the $2,000 ultimately awarded by this court.

If the district court had held a hearing as plaintiffs requested, we might now know what theories it believed were excessive and what hours were therefore unnecessary. In short, we would be informed how the court arrived at the $2,000 figure. But in the absence of such reasons, the only reasonable inference is that the fee award was matched to the judgment which plaintiffs ultimately obtained. But if it is an abuse of discretion to set fees solely on the basis of a formula applying hours spent times billing rate, *Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1322 (7th Cir. 1976), I believe it is equally abusive to award fees solely by the amount of recovery obtained.[11]

## III

The conclusion reached by the majority seems to be based primarily on the belief that the granting of large attorney fee awards (regardless of the validity of such an award in a particular case) will encourage the filing of questionable claims which defendant-creditors will be forced to settle because the costs of litigation will become too prohibitive. I share this concern and believe it is an important consideration in making a fee award. My difficulty, however, is that it does not fit the facts of this case.

The record here is barren of any evidence that plaintiffs pressed questionable claims or refused to settle except on outrageous terms. If anything, the record proves the contrary. The district court found that defendants had violated two state laws and had violated the Truth in Lending Act in seven different ways. This court affirmed the violation concerning understating the annual percentage rate; it did not have to consider the merits of the other Truth in Lending violations because of the interpretation given the 1974 amendment.

Nor is this a case where the defendants were at the mercy of the plaintiffs, who typically set the perimeters of a lawsuit. At trial it was the defendants who had the burden of establishing their affirmative defense of a bona fide mistake. Furthermore, after losing on all issues, it was defendants who chose to appeal and challenge the findings of the trial court. The point is this:

---

**9.** Canon Seven provides: "A lawyer should represent a client zealously within the bounds of the law."

**10.** Nor should counsel be penalized because Congress amended the Truth in Lending Act between entry of the judgment and the appeal. As this court noted in the earlier opinion, whether such a statutory change could apply to a case wherein a judgment had been entered was a question whose answer was "not particularly clear." 537 F.2d at 875. Counsel was therefore fully justified in briefing and arguing that the amendment could not be applied to this case.

**11.** I too agree that petitioner is not entitled to an award of $30,000 just because defense counsel received such a sum. But I do not agree

that such evidence is irrelevant. One of the factors which district courts are to consider in setting a reasonable fee is "[t]he fee customarily charged in the locality for similar legal services." *Waters, supra*, 502 F.2d at 1322. What better evidence is there of this information than the fee which defendants paid their attorneys? I fully concur with the Second Circuit when it said in *Taylor v. Scarborough*, 66 F.2d 589, 591 (2d Cir. 1933):

> While the fee paid counsel by the other side is by no means conclusive of what is a reasonable fee for the plaintiffs' services, we do think that it is quite persuasive in the circumstances here disclosed.

All the aces were not in plaintiffs' hands as the defendants would suggest. Unlike the typical case, the defendants here held some of the aces. The defendants were legally justified in electing to make a militant defense; they also had the right to appeal an adverse judgment. But in deliberately choosing such a course of action, they cannot now be heard to complain that it would be unfair to require them to pay a reasonable fee to plaintiffs' attorney.

Defendants are not without weapons to curtail, if not stop entirely, the possibility of "forced settlements." If a plaintiff's settlement demands are unreasonable, a defendant may make an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. Once a defendant makes such an offer, he is not liable for plaintiff's costs and attorney's fees if plaintiff does not ultimately recover the amount of the offer. Through such a device a defendant can place on the plaintiff much of the financial risk involved in litigation.

Finally, the policy of discouraging the filing of questionable claims must be balanced against the policy underlying the Truth in Lending Act itself. That Act embodies the national policy that economic stabilization and competition will be enhanced if consumers are given accurate and meaningful disclosure of credit. See 15 U.S.C. § 1601. Enforcement of this policy was placed primarily on the private sector through suits for civil penalties. A provision for attorney's fees helps assure that enforcement will take place. But such a provision is rendered meaningless unless attorneys for successful parties are given reasonably adequate compensation for their services.

The need for adequate compensation is particularly important since the statutory penalty is now limited to $1,000 per transaction. If a presumption is imposed that a successful attorney is allowed only that amount recovered by his client—as apparently was done here—creditors can effectively stop the filing of all Truth in Lending actions. By refusing to negotiate even reasonable claims and by litigating every case, creditors can soon force a plaintiff to terminate the litigation, not because his claim is invalid, but because it is no longer economically feasible for his attorney to continue the case. This case is a prime example. I dare say few attorneys will handle a Truth in Lending case when they learn that they may earn only $5.71 an hour.