Thomas J. STRAMA, Plaintiff-Appellee,

v.

Paul Q. PETERSON, M.D., et al.,
Defendants-Appellants.

No. 82–1208.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1982.
Decided Sept. 16, 1982.

---

Jerome A. Siegan, Corp. Counsel, Chicago, Ill., for defendants-appellants.

Stephen G. Seliger, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and FOREMAN,* Chief District Judge.

CUMMINGS, Chief Judge.

In June 1978 plaintiff Thomas J. Strama filed a two-count complaint against former Chicago Fire Commissioner Richard Albrecht, Illinois Department of Public Health Director Dr. Paul Q. Peterson, Mobile Intensive Care Coordinator Karin Swanson, and the Billings Hospital Chief of Mobile Intensive Care Dr. Frank J. Baker.[1] Count I alleged that defendants Albrecht and Baker discharged the plaintiff from his job as a Chicago Fire Department paramedic on arbitrary and capricious grounds and without a hearing in violation of Section 1 of the Civil Rights Act of 1871 (42 U.S.C. § 1983). The remaining three defendants were charged with causing the revocation of Strama's paramedic certification without a hearing in violation of his due process rights. Count II charged that Baker, Strama's supervising physician, wrongfully interfered with Strama's job and Illinois Department of Public Health paramedic certification in violation of Illinois law. An amended complaint was filed on October 6, 1978, and a second amended complaint on June 11, 1979.

Defendant Albrecht filed a motion for summary judgment which was taken under advisement by Judge Perry on February 12, 1980. The suit was reassigned to Judge Shadur on June 24, 1980. On June 17, 1981, Judge Shadur denied the plaintiff's and various defendants' motions for summary judgment on Count I of the second amended complaint.

On August 4, 1981, plaintiff Strama and defendant Albrecht filed a stipulation disposing of the controversy between them. Under the settlement, plaintiff was reinstated in his position of career service paramedic with the Chicago Fire Department as of August 1, 1981, together with full credit for seniority and other benefits due him since the February 18, 1978, date of discharge. The settlement also awarded him gross back pay of approximately $65,000, which was reduced to $22,095.17 by Strama's post-discharge earnings, and further reduced to $10,676.40 after tax and pension deductions. The settlement provided that the cause of action would be dismissed with prejudice as to defendant Albrecht, the City of Chicago, and its officers and agents. However, the settlement preserved the cause of action against Drs. Baker and Peterson and Coordinator Swanson. The settlement also provided that the plaintiff's attorneys should attempt to settle their fees with Albrecht's attorneys, but failing that, return to court with a petition for attorneys' fees.

---

* The Honorable James L. Foreman, Chief District Judge of the Southern District of Illinois, is sitting by designation.

1. Defendants City of Chicago and former Mayor Michael Bilandic were dismissed from the case on March 16, 1979.

Albrecht's and plaintiff's attorneys could not come to agreement on the subject of plaintiff's attorneys' fees. Consequently, on September 16, 1981, the plaintiff requested Judge Shadur to award attorneys' fees and costs totalling $47,054.06. The petition for attorneys' fees was supported by an affidavit containing the following summary:

SUMMARY

ATTORNEY TIME

| | | |
|---|---|---|
| Mr. Seliger: | 300.75 hours x $80/hour | $24,060.00 |
| Mr. Johnson: | 60 hours x $50/hour | $ 3,000.00 |
| Ms. Weiner: | 23.50 hours x $75/hour | $ 1,762.50 |

PARALEGAL TIME

| | | |
|---|---|---|
| Mr. Johnson (student in 1979): | 25 hours x $25/hour | $ 625.00 |
| Ms. Sieler: | 25 hours x $25/hour | $ 625.00 |
| TOTAL | | $30,072.50 |
| MULTIPLIER OF 1.5 | | $45,108.75 |
| TOTAL ATTORNEYS' FEES CLAIMED | | $45,108.75 |

COSTS

| | |
|---|---|
| Filing Fees | $ 50.00 |
| Witness Fees | $ 67.00 |
| Transcripts | $ 1,251.85 |
| Travel to deposition | $ 140.45 |
| Copying | $ 286.01 |
| Expert Fee | $ 150.00 |
| TOTAL COSTS CLAIMED | $ 1,945.31 |

In addition, plaintiff filed a 17-page document showing the time spent by lead counsel Stephen Seliger, assistant attorneys David A. Johnson and Barbara Weiner, and paralegals Johnson and Sieler. Time sheets were not supplied for the paralegals to support their claim for 25 hours each at $25 per hour, but criticism of this shortcoming has been dropped by Albrecht.

Plaintiff's lead counsel simultaneously filed a memorandum in support of the petition for attorneys' fees and costs. This was opposed by defendant Albrecht's memorandum of law, resulting in a reply memorandum and supporting affidavit filed by plaintiff's counsel, plus similar affidavits by David Johnson and Barbara Weiner. Still another affidavit in support of the petition for fees was obtained from Lisa Kohn, an associate with the firm of Borovsky, Ehrlich & Kronenberg, showing that her firm had

**2.** Another firm withdrew its representation of plaintiff on November 16, 1978, since he could

refused to represent plaintiff because of the amount of time that would be involved and because plaintiff could only afford a contingency fee arrangement.[2] Thereupon Albrecht filed still another memorandum opposing plaintiff's reply memorandum.

After considering all the foregoing documents, Judge Shadur issued a memorandum opinion and order, 541 F.Supp. 75, awarding the plaintiff attorneys' fees and costs under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988). His order granted all attorneys' fees and costs requested by plaintiff with the exceptions that instead of applying a 1.5 multiplier to lead counsel Seliger's $80 per hour fee (which would have yielded $120 per hour), Judge Shadur simply increased Seliger's rate to $125 per hour, and he also refused to apply the 1.5 multiplier to the time spent by assistant attorneys Johnson and Weiner and the paralegals or otherwise increase their compensation. This resulted in the following award:

| | | |
|---|---|---|
| Seliger: | 300.75 hours x $125/hour | $37,593.75 |
| Johnson: | 60 hours x $50/hour | $ 3,000.00 |
| Weiner: | 23.5 hours x $75/hour | $ 1,762.50 |
| Johnson (student): | 25 hours x $25/hour | $ 625.00 |
| Sieler (paralegal): | 25 hours x $25/hour | $ 625.00 |
| Expenses: | | $ 1,945.31 |
| | Total | $45,551.56 |

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court directed the entry of final judgment for plaintiff in the sum of $45,551.56, and Albrecht brought this appeal. We affirm the district judge's order except with respect to increasing Seliger's hourly fee.

### Propriety of Fees Claimed Apart From Increasing Seliger's Fees

As noted above, Stephen Seliger requested fees for 300.75 hours he spent on this matter at a rate of $80 per hour, totalling $24,060. In addition, he requested the use of a multiplier of 1.5 as to the fees for his time, which would have increased his award

not afford to pay its fees (Exhibit A to R 13).

from $24,060 to $36,090—slightly less than the $37,593.75 eventually awarded by Judge Shadur for Seliger's time.[3]

Applying our precept that a starting point for the award of attorneys' fees is the "lodestar" formula of multiplying hours spent times billing rate (*Waters v. Wisconsin Steel Works of International Harvester Co.,* 502 F.2d 1309, 1322 (7th Cir. 1974), certiorari denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823), the district court concluded that no time spent by Mr. Seliger was "wasted or unnecessary" (Mem.Op. 2). Without differentiating between court time and office time, the court stated that the requested rate of $80 per hour was "modest indeed" because Seliger's contemporaries with comparable credentials would charge $100–$135 per hour (Mem.Op. 5). The court then decided to permit recovery for all requested time because plaintiff's counsel had "carefully excluded time [55 hours] spent exclusively on his claims against other defendants" (Mem.Op. 7; plaintiff's br. 17). Judge Shadur added that Albrecht could pursue his right to contribution if defendants Drs. Baker and Peterson and Coordinator Swanson should subsequently be found liable.[4] Our examination of the affidavits and time sheets filed with the district court convinces us that Seliger was fully entitled to recover from Albrecht $80 per hour for the 300.75 hours claimed and that the amounts awarded for his associates' and paralegals' time were appropriate.

### Increasing Seliger's Fees

The district judge's memorandum opinion justified the better than 50% increase in lead counsel Seliger's hourly billing rate by considering the elements set forth in the American Bar Association Code of Professional Responsibility. We approved the use of those elements in the *Waters* case, *supra;*

in *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598, 604 (7th Cir. 1979), certiorari denied, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599; and elsewhere. The Code of Professional Responsibility states that

> Factors to be considered as guides in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

The district judge concluded that part of factor (4)—the end result obtained, reinstatement of Strama—and all of factor (6)—three years of high-quality representation—support increasing Seliger's fee from $80 to $125 per hour.

As to the first factor, however, Judge Shadur determined that this case was not unusually complex nor did it involve novel legal issues, because the only question was whether the procedures the defendants followed in terminating the plaintiff comported with due process. Consequently the first factor could not support increasing Seliger's billing rate.

---

**3.** Plaintiff no longer claims that the multiplier should have been used with respect to his associate counsel and the paralegals.

**4.** The various wrongful discharge and decertification claims against defendants Baker, Peterson, and Swanson have now been tried. Peterson and Swanson were found liable to Strama under Count I in the amounts of $3,000 and

$3,700, respectively. Baker was found liable on Count II of the complaint in the amount of $53,000. Since Count II involved only state law claims, the district court held that Baker is not liable for attorneys' fees. Strama's motion for attorneys' fees against Peterson and Swanson is still to be decided by the district court.

The district judge also noted that the second factor was not present because plaintiff's counsel spent only some three weeks a year on this case during the three years of this litigation, leaving ample time to accept other employment.

Although not mentioning the third factor, the judge did remark that Seliger's contemporaries with comparable credentials would charge $100–$135 per hour (Mem.Op. 5). Whether, as seems likely, this was for in-court time was not stated.

The judge did not mention the fifth factor but it clearly did not weigh in favor of boosting Seliger's rate because Seliger was under no time or other pressure; Strama had found alternative employment and the eventual back-pay award and reinstatement of seniority and other benefits made him whole.

Judge Shadur also impliedly found support from factors (7) and (8). He found that Seliger was an especially able lawyer and noted that Seliger's fee arrangement here was contingent. Judge Shadur also noted that Seliger's "practice necessarily involves a substantial dependency on fee awards in successful cases" (Mem.Op. 5).

We conclude that it would be improper here to award Seliger a bonus beyond his usual billing rate. First, as in Kamberos, supra, where a multiplier of 1.5 was reduced, the legal issues here were "relatively simple and few" (603 F.2d at 604, quoting Beazer v. New York Transit Authority, 558 F.2d 97 (2d Cir. 1977), reversed on other grounds, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587). Again as in Kamberos, many of the special factors that help justify inflating attorneys' fees were not present here. Since Seliger's time was spread over a three-year period, he was not precluded from accepting other employment nor operating under peculiar time limitations.

We also note our holding in Bonner v. Coughlin, 657 F.2d 931, 936–937 (7th Cir. 1981), where we pointed out that the contingent nature of the fee "alone does not justify the use of the multiplier." See also Kamberos, supra, 603 F.2d at 604. As stated in Bonner, increasing the billing rate is not appropriate where the dollar amount of the judgment obtained is "fairly minimal" (as it was here after the various deductions) even though "counsel's representation was competent and vigorous" (657 F.2d at 936). In this case, as in Bonner, "the factual issues were straightforward" and there was no evidence that "the prosecution of this case precluded other employment" (id.). As Judge Pell observed there, since we are approving a fee award based upon the rate currently claimed by plaintiff's counsel, any harm to him by the delay in payment between the time legal services were rendered and the recovery of his fee does not justify a multiplier. In addition, plaintiff's counsel is being compensated at a uniform rate rather than being assessed lower rates for out-of-court time, which justifies "charging a modest flat rate for all hours which rate, of course, would be less than the maximum in-court hourly charge" (657 F.2d at 937). Of Seliger's 300.75 hours, only 25 hours were spent in court (R. 11, Summary and Description of Work).

At the oral argument and on brief, plaintiff's counsel relied on Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 (7th Cir. 1982). Here, however, as in that case, "an attorney may be over-qualified for particular services which could reasonably be performed by a less skilled or experienced attorney * * * [so that] it may be unreasonable to value the attorney's time at his regular billing rate" instead of at a lower rate (670 F.2d at 767 n. 16). Seliger's regular billing rate of $80 per hour is quite sufficient and requires no increase on the ground that he would be skilled enough to perform more difficult legal tasks than were involved here. We also repeated in Chrapliwy (670 F.2d at 768 n. 18) our earlier holding in Mirabal v. General Motors Acceptance Corp., 576 F.2d 729 (1978), certiorari denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699, that the amount of time which a lawyer claims to have spent on a case should be weighed with the amount in controversy, and that usually attorneys' fees should not be granted "greatly in excess of a client's recovery" (576 F.2d at 730). Putting aside the admit-

tedly high value to Strama of regaining his position with the Chicago Fire Department, the net cash recovery to him is only one fourth the total attorneys' fees and costs awarded by the district court. As we warned in *Mirabal,* "to grant large attorney's fee awards on the basis of relatively small injury would encourage suits which do not further the client's interest or the public's interest" (576 F.2d at 731). Citing *Sprogis v. United Airlines, Inc.,* 517 F.2d 387, 391 (7th Cir. 1975), the *Mirabal* panel pointed out that the precedential value of a decision is another factor to consider and the present case, even though it vindicates Strama's individual rights, has no particular precedential value. While large fees were approved in *Chrapliwy,* that case involved a total recovery of some nine million dollars as well as reinstatement of 300 employees and a change in the Labor Department's procedures. 670 F.2d at 770.

For the foregoing reasons, we vacate the district court's judgment awarding plaintiff $45,551.56 for fees and costs and direct entry of a judgment of $32,017.81 which compensates Seliger at the rate of $80 per hour rather than $125 per hour but otherwise awards the amounts claimed.