## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Dallas M. Patterson, Sr.

v.

Bob Wade Lincoln-Mercury, Inc.

Case No. (Law) 98-223

Ford Motor Credit Co.

v.

Dallas M. Patterson, Sr.

Case No. (Law) 98-53

BY JUDGE EDWARD L. HOGSHIRE

September 29, 2000

In this civil action stemming from a breached lease agreement, Dallas M. Patterson, Sr., has brought a Motion for Reconsideration. Patterson requests that the Court reconsider its June 14, 2000, letter opinion denying his motion to Set Aside Verdict and Award New Trial. Patterson's motion alleged in part that the verdict of the jury which found for the Defendant Bob Wade Lincoln

Mercury Inc. ("Bob Wade") and the Cross-Plaintiff Ford Motor Credit ("Ford Credit") was contrary to the law and evidence in the case and as such should be set aside.

In his motion for reconsideration, Patterson makes three claims. He claims that, as a matter of law, the March 29, 1994, Net Lease agreement ("lease") violated the Consumer Leasing Act, 15 U.S.C. § 1667 (2000), ("CLA") disclosure provisions because (1) the identification of all applicable warranties and (2) the amount of payment required at the inception of the lease were not made in a written statement given to him. Patterson also claims that (3) the Court erred in permitting the introduction of evidence contrary to Ford Credit's pre-trial admissions.

After reviewing the briefs and evidence, for the reasons set forth below, the Court finds that the jury could have reasonably found that the lease complied with the CLA with regard to identification of all applicable warranties in the lease. The Court also finds that whether or not it was error to allow evidence contrary to Ford Credit's pre-trial admissions is moot. This question is moot given the Court's ruling below that the Defendants' failure to disclose the amount of payment required at the inception of the lease constituted a violation of the CLA. Because there was a CLA violation, under the law of the case, the jury was required to find that Patterson had a complete defense to Ford Credit's breach of contract claim. Consequently, the jury's verdict for Bob Wade and Ford Credit was contrary to the law and evidence. Under Virginia Code § 8.01-430, the Court will enter judgment *non obstante veredicto* for Patterson on this issue alone.

*Discussion*

A. *The Ford Extended Service Plan*

Patterson's copy of the lease did not include reference to the Ford "extended service plan" ("Ford ESP"). The Ford ESP is a plan that provides extended service on covered components for a fee. Patterson claims that the Ford ESP is a warranty and as such, according to the tendered jury instructions, must have been disclosed on a written statement that was "given to Mr. Patterson at that time."

The following portions of the Court's instructions to the jury, patterned on the CLA, 15 U.S.C. §§ 1667, and part of its implementing regulation, Regulation M, 12 C.F.R. § 213.4, are at issue in this motion:

Notwithstanding any alleged breach of contract by Dallas M. Patterson, Sr., Mr. Patterson shall have a complete defense to Ford Motor Credit Company's breach of contract claim under the Consumer Leasing Act if he establishes by the preponderance of the evidence that the lease between Bob Wade Lincoln Mercury, Inc., and Mr. Patterson failed to disclose in accurate, complete, clear and conspicuous language any one of the following. . . .

2. The total amount of any payment, advance payment, appropriately identified to be paid by Mr. Patterson at consummation of the lease.

3. A statement identifying any express warranties or guarantees available to Mr. Patterson made by the lessor or manufacturer with respect to the vehicle.

3. All of the above disclosures must have been made prior to the consummation of the lease on a dated written statement, and a copy of the statement must have been given to Mr. Patterson at the time.

All of the above disclosures must have been made together on either (1) the contract or other instrument evidencing the lease on the same page and above the place for Mr. Patterson's signature; or (2) a separate statement which identifies the lease transaction. .

The jury instruction tracks the language of the applicable statute and regulation mandating that disclosure of any express warranties or guarantees must have been made prior to the consummation of the lease and given to Mr. Patterson at that time. The jury found that not indicating the selected Ford ESP option on Patterson's copy of the lease did not violate the CLA as reflected in the jury instructions.

A jury's verdict can only be overturned if it is contrary to the evidence or without evidence to support it under Virginia Code § 8.01-430. *See Rogers v. Marrow*, 243 Va. 162, 166 (1992), *citing Lane v. Scott*, 220 Va. 578, 581 (1979). This can only occur when the verdict is plainly wrong or without credible evidence to support it. *See id.* Mere conflict in testimony or a reasonable difference of opinion is not sufficient for the trial judge to substitute his own conclusions for those of a jury. *See id.* As this Court stated in its June 14, 2000, letter opinion in this case, questions of fact are ideally suited for decision by the jury. Whether the Ford ESP constituted a mere "service plan" or a "warranty" or "guarantee" as contemplated by the CLA requirement, 15 U.S.C. § 1667(a)(6) (2000), while blending mixed considerations of law and fact, was in essence, a question of fact. The Court finds that it was within the jury's discretion to conclude that the Ford ESP did

not constitute a warranty for the purposes of the CLA requirements. Thus, the exclusion of the Ford ESP from Patterson's lease did not violate the CLA jury instruction.

## B. *The Payment at Lease Inception*

The lease agreement that Bob Wade gave Patterson states that the Total Payment Due at Inception for the security deposit and the first month's lease payment totaled $1,582.25. However, Bob Wade obligated itself to pay this amount as part of the verbal agreement that the parties reached in negotiating the sale of the car. (See testimony of Sean Murphy, Transcript, October 15, 1999, at p. 54.) The CLA jury instructions specified that the lease must have disclosed any amounts to be paid by Patterson "prior to the consummation of the lease on a dated written statement." The jury's finding, therefore, that the lease disclosed any amounts to be paid by Patterson at the inception of the lease is plainly in error. The jury could not reasonably have found that Patterson was required to pay the $1,582.25 as listed on the lease because Bob Wade had agreed to and did pay it for him. As a matter of law, the evidence establishes that there has been a violation of the CLA.

The CLA is a strict liability statute. *See Thomka v. A. Z. Chevrolet, Inc.,* 619 F.2d 246, 248 (3d Cir. 1980). The CLA is part of the Truth-in-Lending Act and "[e]nforcement is achieved in part by a system of strict liability in favor of consumers . . . when this standard is not met." *Id.* The CLA requires rigid adherence: "[o]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Id.* at 250, *quoting Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir. 1976). No injury or prejudice to the borrower need be alleged. *See Thomka,* 619 F.2d at 250, *quoting Dzadovsky v. Lyons Ford Sales, Inc.,* 593 F.2d 538, 539 (3d Cir. 1979). The purpose underlying mandatory rigid adherence to the Act, even where no injury is alleged, is to "enable borrowers to compare various credit terms. Any proven violation of the disclosure requirements of the Act is presumed to injure a borrower by frustrating that purpose." *Id.*

Under the CLA and the Court's jury instructions, if any one of the required disclosures was inaccurate, then the jury was mandated to find that Patterson had a complete defense to Ford Credit's breach of contract claim. The jury's finding that the lease represented any amounts to be paid by Patterson at the time of inception is contrary to the evidence and constitutes compelling proof of error under Virginia Code § 8.01-430 and the standard provided in *Rogers,* 243 Va. at 166, *citing Lane,* 220 Va. at 581. Based on Bob Wade's failure to disclose the correct amount of payment due at the

lease's inception, the Court will enter judgment *non obstante veredicto* for Patterson. As a matter of law, because of this CLA violation, Patterson has a complete defense to Ford Credit's breach of contract claim.

## C. *Introduction of Evidence Contrary to Pre-Trial Pleadings*

Patterson claims that under Rule 4:11, Rules of the Supreme Court of Virginia, the jury should have been precluded from considering testimony contrary to judicial admissions made by Ford Credit with respect to disclosure of any payments due at lease inception. The admissions by Ford Credit were made by not timely responding to requests for admissions propounded by Patterson. Rule 4:11 holds that "[a]ny matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Since the Court has granted Patterson judgment *non obstante veredicto* relief on the issue in question, it has become moot and need not be addressed now.

## Conclusion

For the foregoing reasons, the Court will set aside the jury's verdict finding for Defendant Bob Wade and Cross-Plaintiff Ford Credit and grant judgment *non obstante veredicto* for Patterson.

## May 8, 2001

In this civil action stemming from a breached lease agreement, Dallas M. Patterson, Sr., has petitioned this Court for award of attorney's fees and expenses incurred in establishing violations of the Consumer Leasing Act ("CLA"). For the reasons articulated below, this Court grants the petition and awards $12,175.00 in attorney's fees and $3,050.40 in costs and expenses.

## Procedural History

This case was initially a suit brought by the Ford Motor Credit Company ("FMCC") against Patterson in the General District Court of the City of Charlottesville. FMCC sought collection of unpaid amounts pursuant to a lease between Patterson and Bob Wade Lincoln Mercury ("Wade"). FMCC was awarded judgment in the amount of $10,955.77.

Patterson appealed the decision to this Court and filed counterclaims under the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667 *et seq.*, as well

as Virginia's Consumer Protection Act, Virginia Code §§ 59.1-296 *et seq.* Patterson also filed claims for fraud and defamation. The defamation claim was dismissed by the Court. The Court later dismissed Patterson's CLA and consumer protection claims as barred by the applicable statute of limitations. Patterson continued to assert his fraud claims as well as a recoupment defense under the CLA.

Following a four-day trial, a jury returned a verdict in favor of FMCC and Wade on all claims made by Patterson, including the recoupment defense. A motion to set aside the verdict was denied. However, in a letter opinion dated September 29, 2000, this Court reconsidered the case on Patterson's motion and held that the CLA had been violated because Wade and FMCC failed to disclose that Wade rather than Patterson actually paid the $1,582.25 that the lease identifies as the "total payment due at inception" from Patterson. Because there was a CLA violation, under the law of the case, the jury was required to find that Patterson had a complete defense to FMCC's breach of contract claim. The Court entered judgment *non obstante veredicto* for Patterson on this issue alone.

### Issues Presented

(1) May attorney's fees be awarded for a successful CLA recoupment defense claim?

(2) If so, what is the appropriate amount of attorney's fees to be awarded in the instant case?

### Discussion

### I. *Attorney's Fees Awarded for a Successful Recoupment Defense*

The CLA is part of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* Cases decided under the latter are instructive in cases involving only the former. Section 1640(a)(3) provides that a creditor who has violated the TILA is liable "in the case of *any* successful action to enforce the foregoing liability" and the successful claimant is entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." (Emphasis added.) Section 1640(h) permits a consumer to assert a violation of the TILA and enforce liability under the TILA as a defense or counterclaim to an action to collect amounts owed by the consumer. In the

instant case, FMCC initially brought suit to collect unpaid amounts on a lease and Patterson filed counterclaims, including claims under the TILA.

Patterson was successful in asserting the TILA as a complete defense to FMCC's breach of contract claim. The issue before the Court is whether a successful recoupment defense qualifies as a "successful action to enforce . . . liability" under § 1640(a)(3). The CLA is a strict *liability* statute. *See Thomka v. A. Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir. 1980). The CLA requires rigid adherence: "[o]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of *liability*." *Id.* at 250, *quoting Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976) (emphasis added). The purpose underlying mandatory rigid adherence to the Act, even where no injury is alleged, is to "enable borrowers to compare various credit terms. Any proven violation of the disclosure requirements of the Act is presumed to injure a borrower by frustrating that purpose." *Thomka*, 619 F.2d at 250.

In *Hayer v. National Bank of Alaska*, the court held that if a "debtor raises a claim under the TILA, as a partial defense, the debtor may be awarded a reasonable attorney's fee for successful assertion of that claim." 619 P.2d 474, 476 (Alaska 1980). Moreover, the court ruled that the clause in § 1640(a)(3) requires a mandatory award of attorney's fees where the debtor prevails under the TILA. *See id.* "Congress has required the award of attorney's fees to encourage vindication of Truth-in-Lending Act rights and effect broad compliance with the Act by private rather than governmental action." *Id.* The court in *Purtle v. Eldridge Auto Sales* explained that even in a case where the successful TILA claimant fraudulently induced the credit agreement, consideration of attorney's fees was appropriate because of the mandatory nature of attorney's fees under the TILA. 91 F.3d 797, 802 (6th Cir. 1996). In *Brown v. United States Life Credit Corp.*, the court remanded the case for determination of attorney's fees as a result of its finding a successful recoupment defense under the TILA. 602 S.W.2d 94, 98 (Tex. Civ. App. 1980). Lastly, the court in *Allbright Mortgage Co. v. Hill* plainly states that some award is required for a prevailing plaintiff under the TILA, "absent unusual circumstances." 213 B.R. 943, 945 (D. Md. 1997).

This Court finds that the CLA requires an award of reasonable attorney's fees and expenses following a successful recoupment defense under the CLA. There are no unusual circumstances in the instant case that preclude the Court from making a determination of the reasonable attorney's fee.

## II. *Determination of the Amount of Attorney's Fees*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Allbright*, 213 B.R. at 945. This calculation is commonly referred to as the lodestar amount. In a TILA case, the United States Court of Appeals for the Fourth Circuit has held that courts shall consider twelve factors relevant to the determination of attorney's fees as they are expressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Barber v. Kimbrell*, 577 F.2d 216, 226 (4th Cir. 1978). Courts should make detailed findings based on these factors. *See id.* The twelve factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like works; (6) the attorney's expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases.

*See id.*

Additionally, the United States Supreme Court has addressed the situation where a plaintiff's multiple claims for relief involve a common core of facts. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).[2] In the instant case, Patterson made several counterclaims, one of which was the ultimately successful CLA recoupment defense. The Supreme Court instructed that in such cases, the trial court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* When a plaintiff achieves only partial success, the lodestar amount may represent an excessive award. *See id.* "The most critical factor is

---

[2]  Although *Hensley* was an action under the Civil Rights Act, its teachings are applicable "in all cases in which Congress has authorized an award of fees to a prevailing party." *Hensley*, 424 U.S. at 433. Thus, it is applicable to the instant case where attorney's fees are mandated by statute under the TILA.

the degree of success obtained." *Id.* When considering how courts should reduce the lodestar amount in order to account for partial success, the Supreme Court indicated the "court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Id.*

Several cases involving TILA claims demonstrate the factors that should be considered by a court when exercising its discretion in awarding attorney's fees. In *Leathers v. Peoria Toyota-Volvo*, a creditor violated the TILA and the attorney's fees for the successful debtor exceeded the statutory ceiling on damage awards. 824 F. Supp. 155 (C.D. Ill. 1993). The court in *Leathers* cautioned that an award of attorney's fees which greatly exceeds the amount of damages at stake "requires strong support from the circumstances of the particular case." *Id.* at 159. In *Kramer v. Marine Midland Bank*, the petitioner moved for an award of attorney's fees in the amount of $38,634.75 when only one of ten asserted claims under the TILA was successful. 577 F. Supp. 999, 1000 (S.D. N.Y. 1984). The court awarded $2,000.00 in attorney's fees and asserted that most of the work done in the case was "useless" and "apparently performed for the sole purpose of making a record to support the application for fees." *Id.* In *Kramer*, the risk and complexity was brought about by the attorney's conduct. *See id.* at 1001.

The court in *Mirabal v. General Motors Acceptance Corp.* upheld an award of $2,000.00 in a case where the damages awarded under the TILA totaled $2,000.00. 576 F.2d 729, 731 (7th Cir. 1978). The petitioner asserted he had accumulated 120 billable hours while the case was at the trial level and 230 hours preparing the case on appeal. *See id.* at 730. The petitioner also claimed that the opposing attorneys were paid over $30,000 on the case. *See id.* at 731. The court asserted that the amount of time the attorney claimed to have spent "seems clearly out of proportion with the amount in controversy." *Id.* at 730. The court was also aware that awarding large amounts of attorney's fees on the basis of a small injury would encourage suits which do not further the interest of the client or the public. *See id.* at 731.

Finally, of particular interest in the instant case, the court rejected the notion of considering how much the opposing counsel was paid. *See id.* To consider such a figure ignores the possibility that the case may have greater precedential value to another party. *See id.* Also, a plaintiff's attorney might press claims, refuse to settle, or otherwise act to continue the litigation in an effort to force the opposition to incur higher fees. *See id.* The amount of fees paid by one side involves many exigencies and variables in an ongoing attorney-client relationship. *See id.* Accordingly, this Court will not consider the amounts paid to counsel for FMCC when determining the appropriate award to Patterson.

## III. *Calculation and Explanation of Award*

In the case at bar, Patterson seeks an award compensating for 487 hours of work expended by his attorney, Mr. Peter B. Vaden, amounting to $48,700.00. This number represents the lodestar calculation. In addition, Patterson asserts expenses and costs amounting to $12,201.58.

### A. *Johnson Factors 1-3*

Mr. Vaden began working on this case on April 17, 1998. The matter was not resolved on its merits until December 2000. During the course of the litigation, Mr. Vaden asserted several claims on behalf of Patterson and appeared in court at both the general district and circuit court levels. The Court acknowledges that Mr. Vaden spent an inordinate amount of time on the instant case, including research, discussions with experts in the area, as well as drafting and filing pleadings and counterclaims.

There is no dispute in the record that the legal issues and nature of the services provided in this case were relatively complex and specialized. Mr. Vaden demonstrated substantial skill in sorting out the issues and asserting relevant claims on behalf of his client.

### B. *Johnson Factors 4-6*

There can be no question that opportunity costs in pursuing the present litigation were high. Given that over 480 hours were logged on this matter, Mr. Vaden clearly could have spent his time on the solicitation and/or representation of other clients. Additionally, the record is undisputed that Mr. Vaden's fee of $100 per hour was a reasonable billing rate, in line with the prevailing market rate for attorneys with Mr. Vaden's experience practicing in this area.

It must be acknowledged that the attorney's expectation at the outset of this litigation ought not to have been extravagant. Indeed, Mr. Vaden's client had defaulted on his loan and was defending against a collection action. However, FMCC's violation of the CLA was discovered only after the discovery process was initiated.

### C. *Johnson Factor 8*

The record in this case is unclear concerning the amount in controversy. Yet the results ultimately obtained are calculable; Patterson's successful

recoupment counterclaim was a complete defense to FMCC's breach of contract claim.

This Court recognizes that each of the claims asserted by Patterson, including fraud, defamation, Virginia Consumer Protection Act claims, and the CLA recoupment defense claim, arise out of the same core of facts. However, Patterson's eventual success under the recoupment defense represents, at best, partial success and reduction of the lodestar amount is appropriate.

### D. *Johnson Factors 9, 10, 11*

The record is undisputed concerning Mr. Vaden's ten years of experience as a litigator handling civil matters in the Virginia state and federal courts. There is no mention in the record concerning the undesirability of this case within the legal community. Patterson was a new client for Mr. Vaden.

### E. *Johnson Factors 7, 12*

The Court finds that factor 7 is not applicable in the instant case. The Court accepts Patterson's assertion that no data is available recording amount of awards in similar cases. FMCC has produced no data regarding this factor.

### Conclusion

The lodestar amount is clearly disproportionate to the amount of time and effort expended on the successful recoupment defense claim in this case; only partial success was obtained. Counterclaims under the Consumer Protection Act, fraud, and defamation were each asserted and dismissed by the Court or rejected by the jury. The Court does not choose to identify specific hours that should be eliminated, but rather will simply reduce the award based on an evaluation of the twelve *Johnson* factors.

The Court is also reminded that Congress included a provision requiring the award of attorney's fees in the TILA in order to "encourage vindication" of the TILA and "effect broad compliance with the Act by private" action. *Hayer*, 619 P.2d at 476. Indeed, Congress did want to encourage attorneys to be willing to accept cases concerning violations of the TILA and force violators to pay attorney's fees so that companies do not simply assume the nominal cost of a violation and ignore the law.

For the foregoing reasons, and with the guidance of the case law discussed above, the Court awards a total award of attorney's fees and costs in the

510

amount of $15,225.40. This amount represents twenty-five percent of the amount requested by Patterson and reflects the Court's consideration of the failed counterclaims and the partial success obtained. However, the award also recognizes Mr. Vaden's considerable work in this case, the ultimate outcome representing a complete defense against a $10,955.77 jury verdict, and the intent of Congress to encourage private enforcement of the CLA.