In re ILLINOIS CONGRESSIONAL DISTRICTS REAPPORTIONMENT CASES.

No. 82–1953.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1982.

Decided April 5, 1983.

Steven F. Molo, Chicago, Ill., for defendants-appellants.

Kevin M. Forde, Chicago, Ill., for plaintiffs-appellees.

Before PELL and POSNER, Circuit Judges, and BONSAL,* Senior District Judge.

PELL, Circuit Judge.

In this case we decide whether the district court properly increased a concededly appropriate civil rights attorney's fee award by a factor of three primarily because of the complexity of the case and the high quality of the legal work performed by the attorneys for the prevailing party. Appellants Illinois and the Illinois State Board of Elections contend that the multiplier used was excessive and unjustified.

## I. FACTS

On June 30, 1981, plaintiff-appellee Earl Neil Otto, an Illinois resident, brought an action in the Circuit Court of Cook County against the Illinois State Board of Elections in which he claimed that Illinois congressional districting was unconstitutional because the state had not redistricted following the 1980 census. On July 1, Bernard J. Ysursa brought a similar reapportionment case in the United States District Court for the Southern District of Illinois. On July 10, George H. Ryan and others brought a reapportionment action in the Northern District of Illinois, and joined Otto as a defendant.

On July 13, the plaintiffs in *Ryan* moved to have a three-judge court convened and asked that Otto be enjoined from proceeding in his case. The court denied both motions and Ryan appealed to this court.

On July 20, the Attorney General of Illinois removed the *Otto* case to federal court. On August 7, Otto moved to remand the case to the state court. The district court

granted the motion on August 18, but stayed the order pending an appeal to this court. On October 5, 1981, we reversed the district court's order granting a remand to state court and ordered that a three-judge panel hear the constitutional issues presented in the three cases. *Ryan v. State Board of Elections,* 661 F.2d 1130 (7th Cir.1981). On October 19, 1981, the three-judge court consolidated the three cases and designated them *In re Illinois Congressional Districts Reapportionment Cases.*

Because the Board conceded that the prior districting plan was unconstitutional, the only issue at trial was determining which of the three proposed maps should be implemented—the Otto map, the Ryan map, or the Howlett-Ogilvie map. Trial began on November 5, 1981 and ended on November 11. On November 23, 1981, the court issued its decision adopting the reapportionment plan proposed by Otto, with slight modifications. *In re Illinois Congressional Districts Reapportionment Cases,* No. 81 C 3915 (N.D.Ill. Nov. 23, 1981). On January 11, 1982, the Supreme Court summarily affirmed the district court's order. 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982) (mem.).

As the prevailing party in a civil rights action, Otto petitioned the district court to award attorney's fees under 42 U.S.C. § 1988. In a decision dated May 25, 1982, the court, no longer consisting of three judges, determined that plaintiffs would be compensated for 915.5 hours of legal work by three lawyers, for a "lodestar" rate of $128,215.[1] The Board did not challenge the hours spent or the rate of compensation.

The district court then increased the lodestar rate by a factor of three, for a total attorney's fees award of $384,645. The court directed an additional award of $3915 for paralegal work and $25,647.67 for costs,

---

* Dudley B. Bonsal, Senior District Judge for the United States District Court for the Southern District of New York, sitting by designation.

1. The rates and hours for counsels' time were as follows:

| Harte | $165 per hour for 672.5 hours or | $110,962.50 |
| Casciato | $ 80 per hour for 155.5 hours or | $ 12,440.00 |
| Whitt | $ 55 per hour for 87.5 hours or | $ 4,812.50 |
| | Total: | $128,215.00 |

Paralegal time was calculated at $30 per hour for 130.5 hours for a total of $3915.

yielding a total award of $414,207.67.[2] The court explained its adoption of a multiplier by citing the magnitude and complexity of the case; the advancement of the public interest in the result by ensuring fair representation; the excellent quality of work done by plaintiff's lawyers; and the persuasiveness of plaintiff's plan. The court also noted the contingent nature of the fee arrangement and, as less significant, the preclusion of other employment because of the intense, expedited work necessary for preparing for trial.

The Board appealed the district court's application of the multiplier.

## II.  THE MULTIPLIER

■ The award of attorney's fees is committed to the sound discretion of the trial court. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 162 (7th Cir. 1981). Thus we must uphold the district court's use of the multiplier unless we find that the court abused its discretion.

■ We have addressed the use of multipliers in attorney's fees awards in three cases, all of which suggest that the district courts should not lightly apply large multipliers. The first case in this circuit to approve the use of a multiplier was *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598 (7th Cir.1979), *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). There, the district court had applied a 50% multiplier because of the contingent nature of the fees and the high quality of the attorneys' work. Citing the standards for determining the reasonableness of fees as stated in the ABA Code of Professional Responsibility DR 2–106, we said that high quality and contingency were not enough to justify an award 50% in excess of the attorneys' hourly rate. We reduced the multiplier to 25%, stating that the legal issues were few, that the attorneys were not precluded from accepting other employment, and that the attorneys were not working under time limitations. *Id.* at 604.

**2.** Appellants do not challenge the paralegal work or costs figures, neither of which were

In *Bonner v. Coughlin,* 657 F.2d 931 (7th Cir.1981) (per curiam), we rejected the use of any multiplier on the grounds that the factual issues were not complicated, that the case had little precedential value, and that the attorneys were not precluded from taking alternative employment. We also stressed that the contingent nature of the fee did not alone justify the use of a multiplier. *Id.* at 936–37.

In our most recent case on multipliers, *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982), *petition for cert. filed,* 50 U.S.L.W. 3949 (U.S. May 19, 1982) (No. 81–2135), we reversed the application of a quality bonus of about one-third. We said that apparently the high hourly rate took quality into account and that, to the extent that it did, the bonus for high quality work was inappropriate.

With the principles established in the above three cases in mind, we turn to this case. There are two issues to address: first, whether the district court abused its discretion in applying a multiplier; and second, if not, whether the district court applied a proper multiplier.

### A.  Was a Multiplier Appropriate?

The district judge cited several factors in favor of the use of the multiplier. We shall discuss each in turn, with reference to the cases decided previously by this court.

■ First, Judge McGarr noted that plaintiff's attorneys were employed on a contingent fee basis, although he apparently did not give a great deal of weight to this factor. A court may consider contingency in determining the reasonableness of a fee, but we have said that the contingent nature of a fee does not in itself justify a multiplier. *Bonner v. Coughlin,* 657 F.2d 931, 936 (7th Cir.1981) (per curiam). Thus Judge McGarr did not err in considering contingency as one of *several* factors in favor of a multiplier.

increased by the multiplier.

Second, the court cited the magnitude and complexity of the case. Judge McGarr noted that the case involved three lawsuits with several parties and many intervenors. The issues, he said, required detailed demographic analyses and their application to constitutional requirements, which also had to be analyzed and explained. Despite appellants' contention to the contrary, we agree that the work was complex, especially so when the case proceeded on a greatly expedited basis. The case involved complex, intertwined issues of law and fact; plaintiff's attorneys showed not only that the Otto map had the least numerical deviation but also that it best provided for various minority groups. Thus the case was like neither *Bonner,* where the factual issues were simple, nor *Kamberos,* where the legal issues were straightforward.

Third, the district court cited the excellent quality of the attorneys' work. There is no doubt that the work was exceptionally good; all three judges on the district court panel, including Judge McGarr, who dissented from the holding that the Otto map was best, praised the attorneys.

Fourth, Judge McGarr cited the public interest served by the attorneys for the plaintiff in ensuring fair representation for the public. The appellants strenuously contest this point, arguing that it was primarily the Democratic Party that benefited from the lawsuit, not the public, because the Democrats favored the Otto map.

It is true that the public could be assumed to have benefited from the decision that the prior map be set aside, because presumptively the public would not benefit from a map that was unconstitutional. This aspect of the litigation, however, was not a subject of active contest because the Board conceded that the prior map was unconstitutional. The fee award was not based on the lawyers' efforts to establish that the prior map was unconstitutional, but rather on their successful attempt to persuade the court that the Otto map was the best of the three maps at issue.

The Otto map, which was substantially adopted by the majority of the three-judge court, was in fact favored by the Democratic Party just as the Ryan map was favored by the Republican Party. The Howlett-Ogilvie map was a compromise plan, favored with some modifications by the dissenting judge on the three-judge panel.

The purpose of reapportionment cases is to ensure the right of people to equal representation, "the fundamental goal for the House of Representatives." *Wesberry v. Sanders,* 376 U.S. 1, 18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964). We can only assume that the majority of the three-judge panel was of the opinion that the public interest was best served by the Otto map and we cannot say in the present case that the map adopted ceased to be in the public interest simply because it was favored by the Democratic Party as probably being helpful to the goal of electing Democratic Congressional candidates.

Furthermore, we believe that the Board is exalting form over substance in saying that the award serves no deterrent function because the failure to redistrict was the legislature's fault, not the fault of the Board. The argument is without merit because the state ultimately bears the cost of the assessment of attorney's fees through its agency, the State Board of Elections.

Finally, Judge McGarr noted that it was relevant, though not very important, that plaintiff's attorneys were to some extent precluded from other employment because of the case. We noted in *Kamberos* that this factor is relevant, especially when the case proceeds on an expedited basis, as here. 603 F.2d at 636.

Thus we conclude that 'the district court did not abuse its discretion in applying a multiplier in this case. Of the factors we have previously stated as relevant to a decision to apply a multiplier, all were in favor of a multiplier to a greater or lesser degree.

## B. Was a Multiplier of Three Appropriate?

Although we have found that the district court properly employed a multiplier, we must consider whether a multiplier of three

**384**

was appropriate. We hold that it was excessive under the circumstances.

■ We begin by noting that we have never approved a multiplier as high as three. Rather, the import of our three opinions considering multipliers is that district courts should not lightly employ them in making fee awards; they should be given only in cases that are significant and where the quality of the attorney's work is considerably above average.

■ There are several reasons why a multiplier of three is excessive in this case. First, and most important, we believe that the quality of the work, fine as it was, did not justify an increase from $165 per hour to $495 per hour for the lead attorney. The lodestar figure reflected the attorneys' normal hourly rates, not some artificially low rate for which the multiplier was compensating. Moreover, the substantial hourly rates, though by no means excessive in this era of high legal fees, to some extent took into account the expertise of the attorneys, as the differing rates for each of the three attorneys show. The attorneys were not being penalized for taking a civil rights case, because the basic rates they received were comparable to what they would have received in private cases.

Second, the enormous bonus the multiplier yielded for the lead attorney leads us to caution that a multiplier has little significance by itself. Its importance is in its effect on the basic hourly rate, and where that rate is already high, a multiplier may yield an excessive bonus. For example, a multiplier of three applied to an hourly rate of $100 yields a total of $195 per hour less than when that same multiplier is applied to the $165 fee involved here.

Third, although the work was excellent, the case was brief. Most of the work was performed between October 19 and November 11, 1981. The significance of this is that the attorneys' period of risk of receiving no fees for their work was much more limited than if the case had gone on for a long time. One of the main goals of the attorney's fees statute is to encourage attorneys to accept civil rights cases where the likelihood of payment for their work is small. An incentive is especially needed when the case is lengthy and the attorney has little likelihood of receiving payment for a long time; thus, a bonus may be particularly appropriate. By contrast, there is less need to provide an additional incentive to compensate for the risk of undertaking uncertain litigation when the period of risk is small, because more attorneys are willing to take a case where their financial exposure is limited in duration.

Nevertheless, plaintiff's attorneys should receive a bonus for their impressive and commendable performance in this case, and because the other factors cited by Judge McGarr and discussed above were present. Accordingly, we hold that a bonus of 20% is appropriate.

Accordingly, we reverse the judgment of the district court and remand the case to it for the limited purpose of amending its judgment to replace the multiplier of three with a bonus of 20%.

REVERSED AND REMANDED.