Julianna McKENNA and Alice Brown, Plaintiffs,

v.

PEEKSKILL HOUSING AUTHORITY, M. George Habeeb, individually and in his capacity as a consultant to the Peekskill Housing Authority, Cyrus A. Bleakley, individually and in his capacity as Chairman of the Members of the Authority, and Jennie Jones, individually and in her capacity as Acting Housing Manager of the Authority, Defendants.

No. 78 Civ. 4993 (CHT).

United States District Court, S.D. New York.

Oct. 27, 1983.

Westchester Legal Services, Inc., White Plains, N.Y., for plaintiffs; Martin A. Schwartz, John T. Hand, White Plains, N.Y., of counsel.

Joseph Scott Jr., Peter Sims, New York City, for defendants.

### MEMORANDUM and ORDER

TENNEY, District Judge.

This is a motion for attorneys' fees and costs under the Civil Rights Attorney's Fees Award Act of 1976, as amended, 42 U.S.C. § 1988 (1976 & Supp. V 1981), and under 28 U.S.C. § 1920 (1976) and Federal Rules of Civil Procedure 54(d) and 56. Plaintiffs originally requested an award of $104,986.45. Subsequent to the Second Circuit Court of Appeals' decision in *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. June 15, 1983), the plaintiffs indicated that an award of approximately $50,000 would be appropriate.

For the reasons stated below the plaintiffs are granted the total sum of $35,-450.51.

*Background*

The factual background of this civil rights action and the issues that it raised are set forth in the previous opinions of this Court, 83 F.R.D. 600 (S.D.N.Y.1979), and 497 F.Supp. 1217 (S.D.N.Y.1980), *aff'd in part, rev'd in part*, 647 F.2d 332 (2d Cir.1981), and will not be repeated in detail. The pertinent facts for the purposes of this motion are as follows. At the time this action was commenced, plaintiffs, Julianna McKenna ("McKenna") and Alice Brown ("Brown"), were tenants in a housing project in Peekskill, N.Y. The Peekskill Housing Authority ("the Authority"), which operated the project, had a rule that prohibited tenants from having overnight or weekend guests without first obtaining the Authority's prior approval. In October 1978 the plaintiffs brought a class action suit under 42 U.S.C. § 1983 challenging the constitutionality of the rule. They sought injunctive and declaratory relief individually and on behalf of all others similarly situated. In addition, each named plaintiff sought $25,000 in damages.

The Court denied the plaintiffs' motion for class certification. 83 F.R.D. 600. In a subsequent decision the Court denied the plaintiffs' motion for summary judgment and granted summary judgment in favor of the defendants. 497 F.Supp. 1217. On appeal, the Second Circuit affirmed the dismissal of the claims for declaratory and injunctive relief on the ground of mootness—while the appeal was pending the

Authority passed a resolution rescinding the rule. 647 F.2d at 334. The court, however, reversed the dismissal of the damage claim and remanded the case for a determination of damages and an award of reasonable attorneys' fees. *Id.* at 336. After the remand, the parties agreed to settle the damage claims; McKenna received $1,500 and Brown $500.

Attorneys from the Westchester Legal Services, Inc. represented the plaintiffs through the appeal. Following remand, the law firm of Hughes Hubbard and Reed represented the plaintiffs *pro bono publico.* It has not requested attorneys' fees.

*Discussion*

This circuit uses the lodestar approach to calculate attorney's fees. *New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* at 1140; *Cohen v. West Haven Bd. of Police Comm'rs,* 638 F.2d 496, 504–05 (2d Cir.1980); *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir. 1977). Under this approach "attorney's fees are calculated by multiplying the number of billable hours that the prevailing party's attorneys spend on the case by 'the hourly rate normally charged for similar work by attorneys of like skill in the area.'" *New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* at 1140 (quoting *Grinnell, supra,* 460 F.2d at 1098). After a base fee has been calculated, using these relatively objective factors, the district court has the discretion to adjust the fee award upward or downward in light of one or more subjective factors, such as the complexity of the issues raised, the risk involved and the results obtained. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *New York State Ass'n for Retarded Children, Inc., supra,* at 1140; *Cohen v. West Haven Bd. of Police Comm'rs, supra,* 638 F.2d at 505.

Using the lodestar approach, the plaintiffs submitted the following schedule of fees and costs:

| Attorney | Hours | Hourly Rate | Lodestar Figure |
|---|---|---|---|
| Andrew L. Levy | 539.00 | $145 | $ 78,155.00 |

| Attorney | Hours | Hourly Rate | Lodestar Figure |
|---|---|---|---|
| John T. Hand (for Westchester Legal Services) | 11.00 | $135 | $ 1,485.00 |
| (for John T. Hand individually) | 12.00 | $135 | 1,620.00 |
| Martin A. Schwartz | 10.25 | $135 | 1,383.75 |
| | | Total: | $ 82,643.75 |
| Lodestar Adjustment (25% upward) | | | 20,660.94 |
| Total Fees Awarded | | | $103,304.69 |
| Total Costs | | | 1,681.76 |
| | | TOTAL AWARD: | $104,986.45 |

Each of the staff attorneys assigned to the case by Westchester Legal Services, Inc.— Andrew L. Levy ("Levy"), John T. Hand ("Hand"), and Martin A. Schwartz ("Schwartz")—has more than twelve years of experience in legal services for the poor. Levy handled the majority of the litigation; Hand assisted him; and Schwartz prepared the fee award application.

Subsequent to the plaintiffs' motion for fees the Second Circuit rendered its decision in *New York State Association for Retarded Children, Inc. v. Carey.* The court reversed a decision that had awarded over $1,400,000 in attorneys' fees and costs to two non-profit organizations, the Legal Aid Society and the New York Civil Liberties Union. In calculating the lodestar figure, the district court had accepted hourly rates derived primarily from the billing rates used by one of New York City's largest law firms. Although the case spanned a ten year period and involved complex legal issues, the court of appeals observed that "an award to non-profit lawyers based upon billing rates charged by profit-making lawyers inevitably produces a windfall." *Id.* at 1150.

The court concluded, *inter alia,* that:

2. Attorney's fees awarded to non-profit law offices should be calculated at billing rates of private attorneys of comparable skill and experience, subject to a maximum "break point" rate to be selected by the district judge in each case at the point above which private billing rates include such a significant profit component and an overhead cost so significantly above that of non-profit law

offices that use of such rates would produce a windfall for such offices. Nonprofit law offices should not receive fees calculated at rates above the selected "break point" unless necessary to secure reimbursement of costs.

. . . . .

4. Attorney's fees for profit-making and non-profit lawyers should be based on current rates when the legal services were rendered within a two- or three-year period, but in protracted cases, rates relevant to the early and later stages of the litigation should be used.

5. Bonuses awarded to non-profit law offices, when awarded at all, should not exceed a modest percentage of the lodestar amount and should not include any increment for uncertain risk of achieving success in the litigation.

*Id.* at 1154–1155.

Applying these principles, the court found that, based on the 1980 billing rates of New York City law firms, $75 per hour was an appropriate break point and that fees should not be calculated at rates higher than this for work done between 1978 and 1980. *Id.* at 1152, 1153 n. 11. Also, the court held that a 10% bonus "sufficiently recognize[d] the exemplary nature of the services rendered."[1] *Id.* at 1154.

In view of the changes that *New York State Association for Retarded Children, Inc.* brought about in the calculation of attorneys' fees, this Court gave the parties an opportunity to file supplemental briefs. Neither side filed additional briefs, nor did they request a factual hearing. Plaintiffs did submit a letter to the Court suggesting a rate of $75 per hour for the services of Hand and Levy, and a rate of $87 per hour (which reflects inflation since 1980) for Schwartz. Letter to this Court from Martin A. Schwartz, Esq. (June 28, 1983) (hereinafter "Schwartz' letter"). In addition, the plaintiffs asserted that a bonus rate of 10% should be applied. *Id.* The defend-

ants did not submit a response to Schwartz' letter.

The defendants did, however, present a number of challenges to the fee application in their original motion that are still pertinent to a determination of the fee award. The defendants' principal argument for a reduced fee is based on their contention that the plaintiffs should not have attempted to obtain class certification. The defendants, citing *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), claim that as a general rule, where plaintiffs seek declaratory and injunctive relief against state or local officials, class certification is denied on the ground that it will not further the implementation of the judgment. Defendants argue that in light of this rule, the motion for class certification was vexatious and meritless. Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Defendants' Memo"), at 4–5. They contend that since *they* will not be compensated for litigating the motion, a mere deduction from the lodestar amount to account for the hours that the plaintiffs spent on the motion would be insufficient. *Id.* They assert that the Court should penalize the plaintiffs by applying a negative multiplier of .5 to the final lodestar amount. *Id.* at 8–9.

Defendants also argue that the action did not involve novel or complex issues or a great risk of loss, and, therefore, the lodestar figure should not be adjusted upward. *Id.* at 9–10. Finally, they contend that the 12 hours that Hand worked on the appeal, when he was not employed by Westchester Legal Services, Inc., should not be charged to them. *Id.* at 12.

In opposition, the plaintiffs argue that inasmuch as courts in this circuit have approved class action certification in situations similar to those involved in the instant case, the motion was not unreasonable. Plaintiffs' Reply Memorandum of

---

**1.** The fee award was based upon litigation that had been conducted on behalf of a class of mentally retarded persons confined at the Wil-

lowbrook Development Center on Staten Island, New York.

Points and Authorities, at 7–9. In addition, they contend that a denial of fees for Hand's work on the appeal would thwart the policy objectives of 42 U.S.C. § 1988. *Id.* at 10.

### Attorneys' Fee Award

With the above discussion in mind, the Court makes the following determinations regarding the award of attorneys' fees and costs.

### Hours

■ The defendants have not directly challenged, as excessive or duplicative, the number of hours plaintiffs have submitted in their application. Defendants' Memo, at 11–12. Thus, subject to the following, the Court accepts the hours as stated in the fee application. Regarding Hand's 12 hours, the Court finds that these are not compensable. In reaching this conclusion the Court need not determine whether the exclusion of this time would run contrary to the policy objectives of 42 U.S.C. § 1988. Another more basic ground exists for the exclusion. Unlike Levy and Schwartz, Hand has failed to submit contemporaneous time records documenting the expenditure of his time. Although the submission of these records is not a prerequisite to an award of attorneys' fees in cases litigated before the decision in *New York State Association for Retarded Children, Inc., see* 711 F.2d at 1148, an attorney seeking payment must still supply the court with sufficiently specific information on the nature of the work done, the date, and the hours worked for the court to make a fair evaluation of the time expended. *See Hensley v. Eckerhart, supra,* ——— U.S. at ———, 103 S.Ct. at 1938, *see also id.* at ———, 103 S.Ct. at 1943 (Burger, J., concurring). In his affidavit, Hand has merely stated that from November 13 to November 30, 1980, while he was practicing law in Oregon, he spent 12 hours assisting in the preparation of the appeal. *See* Affidavit of John T. Hand, sworn to March 11, 1983, ¶ 10. Because the Court is unable to properly evaluate the reasonableness of this time, due to

Hand's lack of specificity, the 12 hours will not be included.[2] However, Hand's affidavit adequately explains his participation in the case while employed at Westchester Legal Services, *see id.* at ¶ 5, and this time will be included.

### Rates

■ Plaintiffs contend that the $75 per hour break point figure used in *New York State Association for Retarded Children, Inc., supra,* should also be used in this case. *See* Schwartz' letter. The plaintiffs, however, have failed to provide the Court with any supporting data on billing rates or costs. Instead, they would have the Court mechanically apply a figure that was derived from "billing rates in New York City in 1980." *New York State Ass'n for Retarded Children, Inc., supra,* at 1152. This, the Court refuses to do. *New York State Association for Retarded Children, Inc.* teaches that the break point should be based on the billing rates of the community in which the applicant attorneys practice. *Id.* at 1151. In this case, that is White Plains, New York. Thus, in the absence of any information from plaintiffs on the billing rates in their community, see *Hensley v. Eckerhart, supra,* ——— U.S. at ———, 103 S.Ct. at 1940 ("the fee applicant bears the burden of ... documenting the appropriate hours expended and hourly rates"), the Court concludes, based on its familiarity with the range of billing rates in the New York City metropolitan area, that appropriate rates would be $60 per hour for Levy's and Hand's services from September 1978 to May 1981 and $75 per hour for Schwartz.

### Lodestar Adjustment

■ The plaintiffs also suggest that the 10% bonus figure from *New York State Association for Retarded Children, Inc.* should be applied in this case. That figure was based on the Second Circuit's assessment that "[t]he ... litigation has undoubtedly been an extraordinarily difficult case

---

**2.** Levy's contemporaneous time records do not indicate that he collaborated with Hand on the

preparation of the appellate brief. See Affidavit of Andrew L. Levy, sworn to June 3, 1981.

for all concerned ... [that] raised novel questions of constitutional interpretation ... [and] equally complex issues concerning the litigation of institutional reform." At 1154. Clearly, the same factors are not present in the instant case. Indeed, the plaintiffs originally suggested that only a modest multiplier would be warranted. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs and Disbursements, at 10.

The Court agrees with the defendants. The issues of fact and law in this case were not so complex or the benefit to the housing project residents so great, as to warrant an upward adjustment in the lodestar amount. *See Beazer v. New York City Transit Auth.*, 558 F.2d 97, 100–01 (2d Cir.1977), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Swift v. Blum,* 502 F.Supp. 1140, 1147–48 (S.D.N.Y.1980); *see also Hensley v. Eckerhart, supra,* — U.S. at ——, 103 S.Ct. at 1940. In fact, under the particular circumstances of this case, where the plaintiffs, as a result of the settlement, have accepted a sum of money that is far less than the amount requested in the original complaint, any bonus would constitute a windfall. *Cf. Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 459 (8th Cir.1983).

■ On the other hand, the Court concludes that plaintiffs' unsuccessful attempt at class certification does not merit a 50% reduction in the lodestar figure. In this circuit a district court may decline class certification when "the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment." *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978). There is no rule that a court must decline class certification. Moreover, the record demonstrates that plaintiffs thought that class certification was appropriate under the circumstances of this case. *See* 83 F.R.D. 600. And in the absence of a showing of bad faith or frivolity this Court will not reduce the lodestar amount by such a substantial factor on the ground that the plaintiffs did not prevail on their motion for class certification.[3] *See Stenson v. Blum,* 512 F.Supp. 680, 683 (S.D.N.Y.), *aff'd,* 671 F.2d 493 (2d Cir.1981), *cert. granted,* — U.S. ——, 103 S.Ct. 2426, 77 L.Ed.2d 1314 (1983); *Richardson v. Civil Serv. Comm'n,* 449 F.Supp. 10, 11 (S.D.N.Y.1978). Thus, the Court concludes that the plaintiffs' attorneys will be adequately compensated by the lodestar amount.

Applying the above, the fee award is calculated as follows:

| Attorney | Hours | Hourly Rate | Adjustment | Lodestar Figure |
|---|---|---|---|---|
| Levy | 539 | $60 | 0 | $32,340.00 |
| Hand | 11 | $60 | 0 | 660.00 |
| Schwartz | 10.25 | $75 | 0[4] | 768.75 |
| | | Lodestar Total: | | $33,768.75 |
| | | Costs[5] | | 1,681.76 |
| | | TOTAL AWARD: | | $35,450.51 |

Accordingly, the plaintiffs are entitled to an award of $35,450.51.

So ordered.

---

3. Even if this Court were to adjust the lodestar figure downward due to a frivolous or bad faith motion by the plaintiffs, the downward adjustment would have to bear some relationship to the amount of time the plaintiffs' attorney spent on the motion. In the instant case, less than 5% of Levy's time was spent on the class action motion, yet defendants would have the court reduce the entire lodestar figure by 50% on the theory that the defendants prevailed on a meritless motion for class certification. The Court knows of no support in either the case law or the statutory history of § 1988 for such a proposition.

4. In the plaintiffs' original fee application, they applied the proposed bonus rate to the hours that Schwartz spent on the preparation of the § 1988 motion. Although it is clear that this time is compensable, *New York State Ass'n for Retarded Children, Inc., supra,* at 1148, even if the Court had approved a bonus rate, it could not be applied to those hours. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 544 F.Supp. 330, 343 (E.D.N.Y.1982), *rev'd on other grounds,* 711 F.2d 1136 (2d Cir.1983).

5. The defendants have not objected to the costs submitted by the plaintiffs.