William H. LYNCH, Plaintiff-Appellant,

v.

**CITY OF MILWAUKEE,**
**Defendant-Appellee.**

No. 83–1859.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1984.
Decided Oct. 31, 1984.

Coffey, Circuit Judge, filed separate opinion concurring in part and dissenting in part.

Thomas E. Bush, Milwaukee, Wis., for plaintiff-appellant.

Rudolph M. Konrad, Asst. City Atty., Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, and COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff appeals from the district court's award of attorney fees in the amount of $1,600.00. Plaintiff, the prevailing party in a § 1983 action, contends that the district court abused its discretion by lowering both the hours and hourly rate claimed by plaintiff's attorney, denying a request for a positive multiplier, and, *sua sponte*, applying a negative multiplier. We affirm the order of the district court with respect to the first two issues, and we vacate that portion applying a negative multiplier.

I.

The underlying action concerned the City of Milwaukee's practice of placing on the City Hall marquee a notice saying "Keep Christ in Christmas" for at least one day during the month of December each year. The city marquee is in constant use throughout the year, displaying various statements of civic and community interest. Each year from at least 1976 to 1981 an area organization, usually the Archdiocesan Confraternity of Christian Mothers, would request that the message in question be displayed, and each year the Wisconsin

Civil Liberties Union would receive several telephone calls objecting to this practice. In December 1981, the director of the Civil Liberties Union informed the city that if religious slogans or messages were to be displayed on the marquee, steps should be taken to disclaim the city's endorsement of those messages. However, the message in question was again displayed with no attribution. Plaintiff—an attorney, an active member of the Civil Liberties Union, and a citizen of the city—requested that the Mayor's office remove the sign. He reports that he was told the statement had no religious context as it was only a suggestion to the public that they write out the full word "Christmas" rather than using the abbreviation "Xmas."

On April 15, 1982, plaintiff brought a civil action based on 42 U.S.C. § 1983, seeking to end the city's practice with respect to the Christmas message on the grounds that such use of city property and funds (for labor) was a violation of the first and fourteenth amendments and an unwarranted entanglement of church and state. Plaintiff sought the following relief: 1) a declaratory judgment that the display violated the Constitution, 2) an injunction ordering the city to refrain from displaying the statement in question or other religious messages without notice that the message was sponsored by some non-governmental group and to establish a policy whereby all religious and non-religious groups would be given equal access to the city marquee for message display, 3) compensatory damages, 4) reasonable attorney fees and costs for maintaining the action, and 5) a preliminary injunction pending trial of the issues. Plaintiff was represented by the same attorney throughout the entire suit.

During August and September 1982, the parties attempted to reach a negotiated settlement. Plaintiff offered to accept the sum of $10.00 in damages and an agreement on the part of the city to display religious messages with attribution, together with reasonable attorney fees which would be determined by the court if necessary. He claims that only the "intransigence" of the city officials prevented a

settlement. The city, on the other hand, claims that it was willing from the start to adopt a new policy and that litigation continued only because plaintiff refused to dismiss the action unless costs and attorney fees were paid. In an affidavit, one of the city's attorneys stated that on September 24, 1982, the court indicated in a letter its frustration in having to resolve the case and stated that the only dispute was the issue of damages and attorney fees, noting that "both would be rather minimal." The record does not contain a copy of this letter. Regarding the attempted negotiation, the district court stated in its decision that, although the matter could and should have been resolved by the parties, the materials in the record did not establish that it was plaintiff's fault that negotiations failed.

Plaintiff moved for an injunction and the city moved for summary judgment. A hearing took place and the district court judge announced in court that summary judgment would be denied and plaintiff's motion granted. The parties were instructed to brief the remaining issues of damages and attorney fees.

Plaintiff submitted the following request for attorney fees:

| | |
|---|---|
| 21.5 hours at $60/hr. (rate charged through 9/30/82) | $1,290.00 |
| 30.5 hours at $70/hr (rate charged after 10/1/82) | 2,135.00 |
| | $3,425.00 |
| 25% multiplier | 856.25 |
| Total | $4,281.25 |

Although it is not clearly stated, apparently the multiplier was requested because of the importance of the issue and because, according to plaintiff, the city had been so intransigent. Defendant opposed the award of any attorney fees, claiming that plaintiff's refusal to settle was a "special circumstance" making such an award unjust.

The district court's order was issued on April 15, 1983. That order granted the following relief: 1) nominal damages of $1.00, 2) a declaratory judgment dealing only with the "Keep Christ in Christmas"

display, 3) a permanent injunction enjoining the city from displaying that message without attribution, and 4) attorney fees in the amount of $1,600.00. The process whereby the district court arrived at the $1,600.00 was announced in a decision issued March 29, 1983 and will be discussed below.

## II.

A district court's award of attorney fees will be disturbed only if the court commits an error of law in the computation or if it has abused its discretion in calculating the amount. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). As in other contexts, an abuse of discretion occurs only when no reasonable person could take the view adopted by the trial court. *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 613 (7th Cir.1982), *cert. denied*, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). The statute, 42 U.S.C. § 1988, does not make an award of attorney fees mandatory, but prevailing parties should ordinarily recover their fees unless special circumstances render the award unjust. *Stewart v. Hannon*, 675 F.2d 846, 850 (7th Cir. 1982). This court has also noted that an award under § 1988 is to be "based on the totality of the case in light of the purpose of the act: 'to permit and encourage plaintiffs to enforce their civil rights.'" *Whitley v. Seibel*, 676 F.2d 245, 253 (7th Cir. 1982), *cert. denied*, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982) (quoting *Coop v. City of South Bend*, 635 F.2d 652, 655 (7th Cir.1980)).

The Supreme Court recently reviewed the considerations that go into determining a § 1988 award of attorney fees.

*Hensley v. Eckert*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The initial step is to multiply the number of hours reasonably expended by a reasonable hourly rate. 103 S.Ct. at 1939. The resultant figure, which has often been referred to as the "lodestar" amount,[1] may then be modified upward or downward, depending on the following considerations:

1. the time and labor required;

2. the novelty and difficulty of the questions;

3. the skill requisite to perform the legal service properly;

4. the preclusion of employment by the attorney due to acceptance of this case;

5. the customary fee;

6. whether the fee is fixed or contingent;

7. time limitations imposed by the client or the circumstances;

8. the amount involved and the results obtained;

9. the experience, reputation, and ability of the attorneys;

10. the "undesirability" of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*Hensley v. Eckert*, 103 S.Ct. at 1937 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

These factors ("the *Johnson* factors") may be considered either in setting the initial components (hours and rates) or in determining whether to modify the lodestar figure.[2]

---

1. Although the Supreme Court does not use the term "lodestar" in *Hensley*, this court has frequently done so. *See In re: Illinois Congressional Reapportionment Cases*, 704 F.2d 380 (7th Cir.1983); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982), *cert. denied*, 491 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Strama v. Peterson*, 689 F.2d 661 (7th Cir.1982).

2. In several cases this court has implied that the enumerated factors were to be considered only

on the second step—determining whether the lodestar amount should be modified. *See Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1212 (7th Cir.1983); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d at 769; *Strama v. Peterson*, 689 F.2d at 665. However, in *Hensley* the Supreme Court specifically noted that many of these factors are usually "subsumed" in the initial calculation of reasonable hours and rates. 103 S.Ct. at 1940 n. 9.

In general, the procedure. outlined in *Hensley* accords with this court's discussions of the process of establishing reasonable awards. *See Strama v. Peterson*, 689 F.2d 661 (7th Cir.1982); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982). However, certain differences should be noted. This court has typically discussed a list of eight rather than twelve factors. The eight factors were first listed in *Waters v. Wisconsin Steel Works of International Harvester Company*, 502 F.2d 1309, 1322 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). The *Johnson* factors are only slightly different and it is appropriate that we adopt the expanded list cited by the Supreme Court in *Hensley*. In a more substantive area, we observed in *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564 (7th Cir.1983), that *Hensley* affected this court's previous approach in two respects: it implicitly rejected our position that fees should be awarded only for those specific claims on which the plaintiff prevailed, and it emphasized that considerable attention must be given to the relationship between the extent of success and the amount of the award. *Id.* at 566-67. (Both of these considerations relate to Factor 8, the amount involved and the results obtained.)[3]

### III.

The district court calculated its award of attorney fees in the following manner:

| | |
|---|---|
| 40 hours at $60/hr | $2,400.00 |
| 33⅓% negative multiplier | −800.00 |
| Total | $1,600.00 |

The process used in arriving at these figures must be reviewed in light of the standard discussed above.

■ The district court found forty hours, rather than the fifty-two claimed by plaintiff's attorney, to be reasonable. A district court may exercise discretion in determining that the hours claimed were not reasonably expended, *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d at 765, and the requested figure should be reduced where the documentation of the hours is inadequate or where some of the time was not "reasonably expended." *Hensley v. Eckerhart*, 103 S.Ct. at 1939. In this case the district judge did not give the basis for his determination that a lower figure was more reasonable, although he did note that there was no "excessive" expenditure of time on the part of plaintiff's counsel. The district court also reduced without discussion the hourly rate for a portion of the time claimed. Plaintiff's attorney indicated that on October 1, 1982, his firm raised its hourly rate from $60 to $70 per hour; however, in making the award, the court found the lower rate, $60 per hour, to be "reasonable for the work done here."

■ This court recently stated that when the district judge wants to grant less than the hourly rate (or, by implication, the number of hours) requested, "he ha[s] to give reasons justifying the particular cut that he want[s] to impose." *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984). And the Supreme Court has cautioned that

**3.** As noted in the dissent, *Hensley v. Eckert*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), was announced after the district court's decision in this case. However, we deem that use of *Hensley* in analyzing the appeal is appropriate; the Supreme Court's decision was a clarification rather than a change of pre-existing law. As noted above, the only relevant change that *Hensley* required in this circuit's earlier method of determining § 1988 cases was to require a greater emphasis on the relationship between the extent of success and the amount of the award. *Illinois Welfare Rights Organization v. Miller*, 723 F.2d at 566-67. We agree that the district court adequately considered this aspect even though the *Hensley* decision was not available at that time. If the plaintiff had been substantially unsuccessful, a reduction of the lodestar figure would have been accomplished by considering Factor 8 of the *Johnson* list. The district court reduced the award of attorney fees because of a limited monetary recovery, not because the plaintiff was not fully successful. Comparing the plaintiff's original request for relief with the judgment of the district court shows that this plaintiff was, in fact, largely successful. Since compensatory damages above $10 were never requested, the only relief not granted was a declaratory judgment referring to all types of religious messages, not just the specific one in this dispute. Although the district court's decision was limited to prohibition of the unattributed display of this particular message, that judgment would have clear precedential value.

it is important for the district court to provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckert,* 103 S.Ct. at 1941. Adequate explanation is necessary for meaningful review of an award. *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1281 (7th Cir.1983). However, the failure to state reasons for altering the hours or rates initially requested does not automatically mean that the district court has abused its discretion in all cases.

■ In *Henry,* there was a large fee request (over $95,000.00) and plaintiffs' attorney had submitted a number of affidavits setting forth the market rates charged by attorneys in the area. The defendants in that case did not question the accuracy of the rates claimed. Without explanation, the district court reduced the rates by 20 to 37 percent, and we stated that reasons would be necessary for the award to be affirmed in those circumstances. 738 F.2d at 193. In the instant case, neither party submitted any evidence establishing either the local prevailing rates or the reasonableness of the number of hours claimed, and the modifications made by the district court were not extreme.[4] It has also been noted that the district court possesses a "superior understanding of the litigation," *Hensley v. Eckert,* 103 S.Ct. at 1941, and this particular understanding would include knowledge of the prevailing rates charged in the area and the amount of time it would be reasonable to expend in accomplishing the work done. Plaintiff advances no argument that persuades us the reductions made here were an abuse of the court's discretion.

**IV.**

Having obtained a lodestar figure of $2,400.00 (40 hours at $60 per hour), the district court declined plaintiff's request to add a positive multiplier of 25%. As explanation, the court noted that the case was not factually or legally complex (*Johnson* Factors 2 & 3), that it did not preclude other work (Factor 4), and that there were no significant time limitations (Factor 7).

■ Although the plaintiff in this case obtained results (a declaratory judgment and injunction, as well as voluntary adoption of a new policy by the city) that amounted to an overall victory, this court has previously indicated that positive multipliers "should be given only in cases that are significant and where the quality of the attorney's work is considerably above average," *In re: Illinois Congressional Reapportionment Cases,* 704 F.2d 380, 384 (7th Cir.1983), and that large multipliers should not be "lightly added." *Id.* at 382. On the record developed in the present case denial of a positive multiplier cannot be found to be unreasonable. *See also Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc).

**V.**

Finally, the district court imposed a negative multiplier, reducing the lodestar amount by one-third, "in view of the nominal award here." We have in the past stated that the nominal nature of damages is a factor to be considered in determining the amount of a fee award, *Bonner v. Coughlin,* 657 F.2d 931, 934 (7th Cir.1981),[5] but at the same time we specifically indicated our agreement with the First Circuit

---

**4.** An abuse of discretion is most clearly established when the party opposing a reduction in rates or hours presents evidence to establish the prevailing rate charge or the reasonableness of the hours expended. In addition to affidavits from other attorneys in the community, *Henry v. Webermeier,* 738 F.2d at 193, such evidence could consist of documents giving the number of hours or rates charged by the opposing party, *see Chrapliwy v. Uniroyal, Inc.,* 670 F.2d at 765. "[T]he object of judicial fee determination is to simulate the results that would obtain if the lawyer were dealing with a paying client." *Hen-*

*ry v. Webermeier,* 738 F.2d at 195. Many different aspects of fee-setting may need to be considered. *See generally id.* at 193–95. The party opposing an award should anticipate and assist the court in quantifying these aspects.

**5.** If the only relief sought in the underlying suit were money damages, the size of the damage award would be relevant in determining the amount of attorney fees (Factor 8—results obtained).

when it held that a nominal damage award does not require a nominal attorney fees award. *Id.* at 934 n. 5 (citing *Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir.1979)).

The civil rights litigant is a "private attorney general" who furthers important national policy objectives; awarding attorney fees in a manner tying that award to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims. *Cooper v. Singer*, 719 F.2d 1496, 1503 (10th Cir.1983) (quoting from S.Rep. No. 1011, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910). Thus, in determining § 1988 fee awards, "[t]he amount of monetary recovery is not as significant as the policy being vindicated," *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir.1983), and "the amount of fees awarded [should] not be reduced because the rights involved may be non-pecuniary in nature," *Hensley v. Eckert*, 103 S.Ct. at 1938 n. 4 (citing S.Rep. No. 94–1011, p. 6 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913).

▬▬ Thus, it is clear that where the primary relief sought is injunctive or similarly non-monetary, the amount of a § 1988 fee award *is not to be reduced merely because money damages may be low or nominal*. Advancing the public good beyond any individual goal is one of the aims of § 1988, and fee awards should not provide an "artificial disincentive to the seeking of such equitable relief." *Sisco v. J.S. Alberici Const. Co., Inc.*, 733 F.2d 55, 57 (8th Cir.1984). Litigants should be compensated for vindicating the public policy even when they do not personally benefit. *Ramos v. Lamm*, 713 F.2d at 557. Indeed, we believe it is especially appropriate to fully repay litigation costs of a plaintiff who did not receive, or even seek, personal benefit. In the case before us, the plaintiff sought to effect the city's compliance with an im-

portant constitutional guarantee; he did not seek any unique individual benefit. It was error for the district court to reduce the § 1988 award of attorney fees because damages were nominal.

Furthermore, we question the manner in which the district court made the reduction—application of a "negative multiplier." As noted above, a positive multiplier is a recognized procedure that may be warranted by the importance of a case or the unusual excellence of representation. However, there is no parallel authority for the imposition of a negative multiplier. While the enhancement of a § 1988 award may be seen as a "bonus," *see, e.g., Strama v. Peterson*, 689 F.2d at 661, a negative multiplier can only imply some type of penalty.

In *McKenna v. Peekskill Housing Authority*, 573 F.Supp. 976 (S.D.N.Y.1983), the defendants proposed a negative multiplier of .5 to penalize the plaintiffs for attempting to obtain a "vexatious and meritless" class certification. The district court, characterizing the request as a "50% reduction in the lodestar figure," declined because there was no showing of bad faith or frivolity on the plaintiff's part. *Id.* at 981. The court also noted that any reduction would have to bear some relationship to the time spent on the certification motion and further stated that it could find no support "in either the case law or the statutory history of § 1988" for the proposition that a percentage reduction of the lodestar should be imposed as a penalty. *Id.*, n. 3. We are as unsuccessful.[6]

We cannot discern any reasonable basis for imposing a general penalty of this nature. Excessive fees and expenditures of time may be taken into account in determining the lodestar amount. Other factors that could justify a reduction are contained in the twelve *Johnson* factors; these include an unimportant case (Factor 2), an

---

**6.** Our research disclosed one other case in which a negative multiplier was proposed as a type of penalty. The defendants in *Rejender v. University of Minnesota*, 546 F.Supp. 158 (D.Minn.1982), proposed a 10% reduction in the

fee award because the plaintiff was a non-profit, publicly-supported institution. The court rejected defendants' proposal without discussing the form of the proposed reduction.

extremely easy issue (Factor 3), or poor performance by the attorneys (Factor 9). The district court normally would approximate a dollar amount to be deducted for the particular reason, with the object being to achieve parity with a similar case not containing that flaw.[7]

 It is not helpful to think of a negative multiplier as simply the opposite of a positive multiplier. While there may be no upper limits on the significance of a case, or the skill required to win it, the structure of § 1988 does provide lower limits. To qualify for an award under § 1988, there must have been a legal cause of action based on a guaranteed civil right and one party or the other must have prevailed. These conditions assure that there is a minimum degree of significance and legal merit. Therefore, we hold that, in all but the most unusual circumstances, any downward modification of the lodestar figure should be for one of the enumerated factors and should be expressed in a dollar amount reflecting, as best as possible, the market value associated with the specific defect. If the circumstances should ever arise in which an overall penalty should be assessed, the reasons for that step will have to be given with great detail and thorough justification.

### VI.

In summary, the district court's computation of $2,400.00 as the lodestar figure and the denial of plaintiff's request for a 25% positive multiplier are affirmed. We vacate the application of a one-third negative multiplier. Consequently, we direct that the plaintiff be awarded attorney fees in the amount of $2,400.00.

AFFIRMED in part; VACATED in part.

COFFEY, Circuit Judge, concurring in part, dissenting in part.

The sole issue on this appeal is whether the district court judge abused his discretion in awarding $1,600 in attorney's fees. I agree with the majority's analysis in section III that the reduction in hours from 52 to 40 at the rate of $60 an hour does not constitute an abuse of discretion. Moreover, in light of the factual and legal simplicity of this case, I agree with the majority's conclusion in section IV that the district court judge properly denied the plaintiff's 25% positive multiplier. I dissent, however, from the majority's erroneous analysis in section V that it was reversible error for the district court judge to apply a 33⅓% negative multiplier "[i]n view of the nominal award here."

The facts and applicable law in this case are remarkably simple. The City of Milwaukee has a well-established tradition of displaying statements of civic and community interest on the marquee attached to the front of the City Hall, above the main entrance. Each year, in mid-December, the Milwaukee Roman Catholic Archdiocese and the Confraternity of Christian Mothers request that the phrase "Keep Christ in Christmas" be displayed. Each year the City complies with the organization's request and displays the phrase for a one or two day period. On April 15, 1982, the plaintiff, William Lynch, filed a lawsuit under 42 U.S.C. §§ 1983, 1988, seeking a permanent injunction to prevent public display of the phrase "Keep Christ in Christmas" unless accompanied by notice of the non-governmental sponsor. During August and September of 1982, Lynch and the City

---

**7.** We should note that not all reductions expressed as a fixed sum (which, of course, is some percentage of the total) or as a percentage are necessarily a penalty. The lodestar figure may be reduced as a result of one of the *Johnson* factors, and on at least one occasion this permissible type of reduction has been referred to as a "negative multiplier." *White v. City of Richmond,* 559 F.Supp. 127, 131 (N.D.Cal.1982), *aff'd,* 713 F.2d 458 (9th Cir.1983). Occasionally such a reduction may have to be expressed in terms of a fixed amount or a percentage, rather than being precisely tied to the hourly fee. For example, in *Copeland v. Marshall,* 641 F.2d at 903, the district court had reduced the lodestar figure by a fixed sum to account for unnecessary time spent by inexperienced lawyers, but there was no attempt to relate the figure to a specific number of wasted hours. On appeal, this action was upheld as a practical approach under the complicated circumstances of that case.

attempted to settle their squabble but were unable to resolve the issue of attorney's fees. Both parties moved for summary judgment, and following oral arguments on December 3, 1982, the district court judge ruled that "the posting of the message in December of 1981 violated the Plaintiff's First Amendment rights." Accordingly, the district court judge enjoined the City of Milwaukee from displaying the phrase "Keep Christ in Christmas" unless it was accompanied by an attribution clause. The judge instructed the parties to submit additional briefs on the issue of damages and attorney's fees.

On December 21, 1982, Lynch filed a letter and supporting affidavits claiming $10 in damages and $4,281.25 in attorney's fees, including 21.5 hours at $70 per hour, 30.5 hours at $60 per hour, and a 25% multiplier. Some three months later, on March 29, 1983, the district court judge awarded one dollar in nominal damages, realizing that any injury to Lynch was "ideological rather than the kind for which actual damages are generally awarded." On the issue of attorney's fees, the district court judge concluded that 40 hours at $60 an hour was a reasonable amount and that the 25% multiplier was improper because there was "nothing factually or legally complex about this case...." The judge added that "[i]n view of the nominal award here, the Court will apply a negative multiplier of one-third." Thus, the district court judge awarded Lynch $1,600 in attorney's fees.

I hasten to note that the district court judge issued his order awarding attorney's fees on March 29, 1983, some two months before the Supreme Court's decision in *Hensley v. Eckerhart*, 103 S.Ct. 1933 (1983) ("*Hensley*") and some nine months before this court's decision in *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564 (7th Cir.1983) ("*Miller*"). In *Hensley* the Supreme Court clarified the factors to

be considered by the district court when determining an award of attorney's fees under section 1988. Specifically, the Court stated that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. *There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'*" *Hensley*, 103 S.Ct. at 1940 (emphasis added).[1] In *Miller* this court readily acknowledged that "*Hensley* affects previous approaches to [section 1988] attorney's fees awards adopted in this circuit in two significant respects." *Miller*, 723 F.2d at 566. One of those aspects is that "*Hensley* emphasizes that courts must give considerable attention to the relationship between the extent of the plaintiff's success and the amount of the fee award." *Id.* at 567. *See also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1281 (7th Cir.1983). In the instant case, the record reveals that the district court judge did, in fact, give considerable attention to the relationship between Lynch's success and the amount of the attorney's fee award. Unfortunately, the Supreme Court's decision in *Hensley* and this court's decision in *Miller* were not available to the district court judge at the time of his March 29, 1983 order, and thus the judge was unable to apply the relevant analysis set forth in those cases.

The district court judge realized that the present case involves a straightforward, non-complex legal issue; whether the phrase "Keep Christ in Christmas" attached to the front of Milwaukee's City Hall above the main entrance, without reference to the non-governmental sponsoring organization, violates the Establishment Clause of the First Amendment. According to the judge, there was "nothing factually or legally complex about this case [and] ... [t]here certainly were no great

1. In March of 1984, the Supreme Court reaffirmed the analysis set forth in *Hensley*. The Court stated in *Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), that section 1988 "requires a 'reasonable fee,' and there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high." 104 S.Ct. at 1548.

time limitations placed on plaintiff's counsel." As a result of this non-complex legal issue and the simple "ideological" injury involved, the district court judge awarded Lynch a single dollar in nominal damages. In light of this nominal damage award, the judge then applied a 33⅓% "negative multiplier" to the attorney fee award. The majority boldly asserts that "[i]t was error for the district court to reduce the § 1988 award of attorney fees because damages were nominal." I disagree. A close scrutiny of the record reveals that the nominal damages awarded in this case are symbolic of the simplicity of Lynch's claim, the strictly "ideological" nature of Lynch's injury, and the virtual absence of any impact resulting from Lynch's "success" on the merits. In short, Lynch has simply succeeded in requiring the City of Milwaukee to display the phrase "Keep Christ in Christmas" with an attribution clause. According to this court's reasoning in *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984), the district court judge is fully justified in reducing the attorney's fee award in such a "simple case."

There is no question that the term "negative multiplier" is a poor choice of words to use when reducing an award of attorney's fees under section 1988. Nonetheless, in the present case, the term appears to convey the simplicity of the legal issue involved and the lack of any substantial impact resulting from Lynch's "success." According to *Hensley* and its progeny, it is this very relationship between the extent of Lynch's success and the amount of the attorney's fee award that is to be given considerable attention. Even though *Hensley* altered the analysis used in this circuit to determine section 1988 attorney's fee awards and was not decided until some two months after the instant case, the district court judge's opinion appears to comply with the spirit of the law set forth in *Hensley*. In light of this fact, I would remand the case and allow the judge to make findings that also comply with the letter of the law set forth in *Hensley*.